ROSE ET UX. *v.* PAAPE ET UX.

[No. 70, September Term, 1959.]

Decided February 2, 1960.

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Richard W. Case,* with whom were *Thomas J. Curley, Roger D. Redden,* and *Smith, Somerville & Case* on the brief, for appellants.

*Ridgely P. Melvin, Jr.,* with whom were *McWilliams & Melvin* on the brief, for appellees.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal by the respondents, Joseph E. Rose and wife, from two portions of a decree of the Circuit Court for Anne Arundel County entered in a suit brought by Ronald C. Paape and wife, against the Roses and the Board of County Commissioners of Anne Arundel County (the Board) first, for a declaration that a rezoning ordinance of the Board dated April 15, 1958, was void, second for an injunction

against the Roses and the Board prohibiting them from using or permitting the use of properties of the Roses for purposes other than those permitted under zoning regulations in force immediately prior to the resolution of April 15, 1958, and third, declaring the complainants, the Paapes, entitled to the use of a strip of land owned by the Roses for access to a body of water known as Rose Haven Harbor. The decree was in favor of the Paapes on all three matters. The Roses appeal from the decree insofar as (a) it held the rezoning ordinance void and (b) it enjoined the Roses and the Board from putting the attempted rezoning into effect and using property of the Roses covered by the resolution for any purpose not permitted under the "Cottage Residential" classification of the County zoning regulations. They do not appeal from the decree as to the Paapes' right of access to the harbor, which was based upon contract, not zoning. The Board did not appeal from any part of the decree.

The Roses are the owners of a marina and the owners and developers of a waterfront tract known as Rose Haven on the Bay in Anne Arundel County, which they purchased in 1946 and have developed since then. The Paapes are the owners of a lot at Rose Haven which they purchased from the Roses in 1953 and upon which they have built a residence. The focal point of Rose Haven, or at least of this suit, is now known as Rose Haven Harbor, formerly Red Lion Pond. It is connected with Herring Bay, an arm of the Chesapeake Bay, and is subject to the ebb and flow of the tide and hence constitutes navigable water. The land at the northeast side of Rose Haven Harbor is, and since its original zoning in 1950 has been, zoned as "heavy commercial", and here the Roses have constructed a yacht club, a modern gasoline service station, a large motel and a swimming pool. The Roses have constructed piers off the yacht club end of the harbor, at which about 275 craft are regularly berthed in the summer, and at which visiting craft also tie up. The Roses have dredged out the harbor and the channel leading to Herring Bay, and have deepened the harbor from little more than a mud pond having a depth of about ten inches of water at high tide to a harbor with a depth of eight to twelve feet.

All of the land immediately surrounding the harbor belongs to the Roses. For the most part they have retained only a narrow strip bounding on the water. The harbor is perhaps 1600 to 1700 feet in length from north to south and roughly 300 to 400 feet in width. The Paapes' lot lies to the east of the harbor and their access to it is across the narrow strip of land retained by the Roses.

In 1950 the land around approximately the southern half of the east side, the south side and the western side of the harbor, including the Roses' retained strip and the area in which the plaintiffs' lot is located, was zoned as "Cottage Residential." This zoning and that of the northeastern side of the harbor were continued when a comprehensive zoning plan for a large area was adopted in 1952.

As the Roses' marina has developed and prospered, they wished to build, and in 1958 started to build, a pier into the southern end of the harbor a few feet offshore from the strip over which the Paapes had access to the harbor. The Paapes (who seem earlier to have entertained somewhat different ideas as to the desirability of a pier off their lot) then protested to the zoning or building authorities, and the latter notified the Roses that the land off which they were building their pier had a residential classification which would not permit the construction and proposed use of their pier. The Roses claimed that they were surprised to be so advised, but thereupon filed an application for the rezoning of their land around the south end of the harbor.

The County Planning and Zoning Commission held a hearing on the application on the morning of April 10, 1958, and on that day recommended its approval. On the evening of the same day the Board of County Commissioners held a hearing on the application, at which the Paapes were the principal opponents. The minutes of that meeting of the Board read in part as follows:

> "After quite a lengthy discussion between the petitioner and the opposition and their attorneys it was mutually agreed by all that if the rezoning was approved it was to contain a restriction for a buffer

zone between the pier and the properties sold facing the harbor, and a restriction that nothing but piers will be constructed on the property.

"The Board advised they will give a decision later."

That appears to conclude the extract from the minutes of April 10, and the following appears to be from the minutes of the Board's meeting of April 15, 1958:

"The following rezoning resolutions were adopted:

1. JOSEPH E. ROSE, Cottage Type Residential to Light Commercial—Case #26-58 District 8—Approval on motion of Commissioner Crosby, seconded by Commissioner Everd, subject to approval of opposition counsellor."

This resolution (except for the condition as to "approval of opposition counsellor") was restated or expanded as a more formal rezoning resolution of the same date, a copy of which duly signed and attested by the President and Clerk of the Board (apparently in form for recordation in the office of the Clerk of the Circuit Court), was put in evidence as a separate document. This is the resolution here under attack. It is usually referred to below as "the resolution", but where it seems necessary or desirable to distinguish between the two resolutions, or the two forms of the same resolution, that appearing in the minutes is referred to as the "informal resolution" and the more elaborate, separate document is referred to as the "formal resolution". The pertinent provisions of the formal resolution are as quoted or summarized below:

"WHEREAS, the Board of County Commissioners is of the opinion that an error was made in the zoning of the below-described property upon adoption of the Comprehensive Zoning Ordinance on July 1, 1952 and that said property should have been properly zoned to permit its use as a harbor facility for storage of small watercraft; and

WHEREAS, the Board is cognizant of the fact that the petitioner has publicly stated that no structures of any kind other than piers and mooring facili-

ties will be erected on the below-described property; and

WHEREAS, in view of the above, and for reasons of public safety, health and welfare, in order to maintain desirable open space, the Board hereby does declare that it will not approve application for building permit on the below-described property for any construction other than the above,

NOW, THEREFORE, BE IT RESOLVED this 15th day of April, 1958 * * * that * * * the Board hereby approves the change in zoning from a Cottage-Type Residential to a Light Commercial District for the property described below: * * *"

Here follows a description of the property rezoned. This covers the entire harbor and not merely the strip of land around its southern end which was all that the rezoning application expressly covered.

The approval of "opposition counsellor" was never given, though it was invited when a copy of the formal resolution was sent to him. The resolution was never recorded or submitted for record in the office of the Clerk of the Circuit Court. The record indicates that the harbor itself—the water area and the land under it—had not been zoned as "Cottage Residential" or, indeed, that it had been specifically zoned at all prior to April 15, 1958; but this appears not to have been realized by the Board or the parties at the time when the 1958 rezoning was under consideration. The zoning, if any, which it had previously acquired was "Agricultural" since that classification was assigned to any zoned area not specifically zoned otherwise. This situation also appears to have been overlooked at the time when the decree of the Circuit Court was signed.

One somewhat confusing question is the status of the resolution here under attack. Under Secs. 2-27 and 2-28 of the 1957 Code of Anne Arundel County (both derived from Ch. 790 of the Acts of 1947), it is provided (by Sec. 2-27) that "[a] copy of all acts, ordinances and resolutions adopted or passed by the county commissioners, certified * * * and at-

tested * * *, shall be filed with the clerk of the [Circuit] court * * *" and (by Sec. 2-28) that "[n]o act, ordinance or resolution shall become effective until a copy thereof shall have been filed with the Clerk of the court * * *."

The fact that this resolution was not filed for record is shown by the Board's answer and by stipulation of counsel for the other parties. Why it was not filed is not clear. It may well have been withheld first because of its submission to counsel for the Paapes for his approval, and when such approval was refused, because of the prospect, and soon thereafter the reality, of litigation. There has been apparently no rescission of the resolution and no move towards its rescission, and Sec. 2-28 imposes no time limit for filing. We do not think that the resolution can be regarded as a nullity, even though it has not become effective. But for this litigation, the resolution could and probably would have been filed; and likewise, but for this suit, it would seem that the Roses could seek, by mandamus proceedings, to require its filing. We accordingly think that it had and has at least sufficient vitality to withstand a claim that either the suit was prematurely brought or that this appeal is premature or moot.

Though the condition with regard to approval by opposition counsel expressed in the informal resolution was not incorporated in the formal resolution, the Board undertook to comply with it by submitting the latter resolution to counsel for the Paapes for approval. The conditions discussed at the April 10th meeting of the Board, relating to a buffer zone and to the construction of piers only, was sought to be incorporated in the formal resolution by the declaration that the Board would not approve a building permit on the property (including the harbor) for construction of any structures other than piers and mooring facilities. (How effective such a declaration might be is a question which we find it unnecessary to pass upon at this time.) The two resolutions or the two different forms of the same resolution, adopted by the Board on April 15, 1958, together constitute, we think, only a single exercise, or attempted exercise, of zoning power.

Zoning powers in Anne Arundel County are derived partly from Ch. 388 of the Acts of 1947, as amended, and partly

from §§ 10-37 of Article 66 B of the Code of Public General Laws (1957 Ed.). In neither of them, nor in the Anne Arundel County Zoning Ordinance (Anne Arundel County Code, 1957 Ed., Ch. 35) do we find any power vested in the Board to attach special conditions to resolutions rezoning properties from one classification to another, or establishing original zoning, which are not applicable generally to all properties in the given classification in which the property in question may be placed. Neither do we find (if, indeed, such a power could properly be conferred) any power to make the rezoning of any property conditional upon the approval of any person.

Taking the two resolutions, or the two forms of one resolution, of April 15, 1958, together, the Board undertook to make the rezoning of the appellants' strip along the east, south and west sides of Rose Haven Harbor conditional upon (a) the approval of counsel for the objectors and (b) a limitation of the uses which would otherwise be permissible under a Light Commercial classification. The latter condition was also sought to be made applicable to the harbor itself, whether that was sought to be done as a matter of original zoning or as a matter of rezoning.

In *Wakefield v. Kraft*, 202 Md. 136, 149-150, 96 A. 2d 27, this Court said: "If the decision of the County Commissioners was that the area called for the status of Commercial A, any of the nineteen uses permitted under that classification had a rank and force equal to any other. The County Commissioners are not a Planning Board, nor have they a right to exact conditions, or promises of a particular use in return for deciding that the public interest justifies that an area should be zoned commercial. * * * This is not to decide, and we do not, whether an administrative official or board may, as a prerequisite to the granting of a variance, attach reasonable conditions. Many courts have held that, within limits, this can be done." This statement was quoted with approval in *Baylis v. City of Baltimore*, 219 Md. 164, 169, 148 A. 2d 429. The rule stated was applied in holding invalid an ordinance enacted by the City of Baltimore reclassifying certain property from residential to commercial use which made the re-

classification conditional upon the execution and recording of an agreement, set out in the ordinance, between the owners of the property and the City. This agreement imposed restrictions upon the use of the property, which was to be used only as a funeral home and only subject to specified conditions as to entrances, exits, parking facilities and the forming of funeral processions. In case of violation of the agreement, the ordinance was to be "abrogated and repealed" and the property was to revert to a residential use classification.

The *Baylis* case discusses the whole problem fully and brings out the different considerations applicable to conditions which may be attached by a zoning board to a special exception or a variance and those applicable to a rezoning involving rezoning by amendment of a zoning map adopted pursuant to a comprehensive plan. It would serve no useful purpose to repeat here what was well said there or to review the numerous authorities there cited. It may be interesting to compare the language of an earlier day (before zoning had come into existence) with regard to limitations upon the power of a municipal legislative body to make the effectiveness of an ordinance conditional upon the approval of some other person or persons which may be found in *Baltimore v. Clunet,* 23 Md. 449, at 468.

In a doubtless well-intentioned effort to compose differences between the owners of Rose Haven and the Paapes and perhaps some other purchasers of lots there, the County Commissioners have sought to impose the conditions above stated. It may be conceded that both conditions, or attempted conditions, are invalid; but the mere effort to attach them as conditions to deciding that the public interest calls for or justifies the rezoning (or zoning) here involved stamps the resulting resolution with the invalidity pointed out in the *Wakefield* case, which was found to exist in the *Baylis* case. It is here no less evident than it was in the latter case.

The *Baylis* case is controlling here and it follows that the resolution is invalid for the reasons there stated. The trial judge found it invalid because of the lack of any showing of error in original zoning, and inferentially (though certainly not expressly) he also rejected the appellants' contention that

conditions had changed sufficiently to warrant rezoning. In view of our holding that it is invalid because of the perhaps even more fundamental defect above stated, we need not review the holding of the trial court or the question of alleged error in original zoning or of changed conditions.

Our holding that the rezoning resolution of April 15, 1958, is invalid calls for the affirmance of those parts of the decree appealed from which so declare it and which enjoin the Roses and the Board from putting into effect the rezoning attempted by that resolution. There remains for consideration the second part of the injunctive provision of the decree which enjoins the Roses from making any use of the property other than such uses as are permitted in areas zoned as "Cottage Residential". This brings up a number of problems, including several which were not decided by the trial court nor even presented to it.

The second prayer of the bill was that the Roses be enjoined from using the property for any purpose not permitted by the zoning regulations in force immediately prior to the adoption of the April 15 resolution. The decree was more specific in limiting uses to those permitted under the "Cottage Residential" classification. It appears that this was inadvertently adopted on the assumption that the harbor had been previously zoned in that manner, just as the Board's resolution had assumed. The fact seems to be that, if the harbor was zoned at all, it was zoned as "Agricultural". Since the decree applies to all the property which the Board attempted to rezone, and since the Board's formal resolution expressly applied to the harbor, some modification of this portion of the decree referring to "Cottage Residential" uses is called for. A modification of the decree in conformity with the second prayer of the bill so as to prohibit uses other than those permitted under zoning regulations in force immediately prior to the adoption of the April 15 resolution is in order. However, in view of other questions sought to be raised in this case, such a modification may leave considerable uncertainty. We do not think that these questions may properly be resolved at this time on the record before us.

These other questions include: (a) whether the County has

any statutory power to zone navigable water or the bottom under such water; (b) if so, whether the Anne Arundel County Zoning Ordinance undertakes to exercise such power; (c) whether, assuming the answer to questions (a) and (b) to be yes, has the harbor been zoned at all, and (d) if so, how; and (e) whether piers take the zoning of the land off or in front of which they may be erected (with a possible subsidiary question as to whether it would be the zoning of the land to which a pier may be connected or the zoning of the land in respect of which the riparian right to build a pier may exist). A still further question (f) might arise with regard to the contractual rights of purchasers of lots at Rose Haven in addition to their right of access to the harbor which was the basis for the third (and unappealed) portion of the decree of the trial court. We think that all of these questions should be left open for further consideration in this case or in other proceedings which might be or become appropriate.

The appellants have urged us to decide at this time questions (a) to (e) inclusive; but, apart from expressing the view above stated, that the harbor as a whole, if zoned at all, was zoned as "Agricultural" and not as "Cottage Residential" prior to April 15, 1958, we do not think that we should do so. There was some discussion during the trial as to whether or not water was zoned in Anne Arundel County, but we do not think that any point was raised with regard to the power of the County to zone areas covered by navigable waters or with regard to whether or not the County Zoning Ordinance undertook to exercise such power, if it existed. The first of these questions, which the appellants describe as the most far reaching issue in the case, we think, was not actually presented until the appellants filed their reply brief in this court. That is too late under Rule 885 of the Maryland Rules.

The decree will accordingly be affirmed insofar as it declares the ordinance of April 15, 1958, to be invalid and enjoins the Roses and the Board from putting the attempted rezoning into effect, but the case will be remanded as to that portion of the decree, dealing with the limitation of uses to which the property may be put, for the modification thereof

and for such further proceedings, if any, in connection with such modification as may be appropriate and as may not be inconsistent with this opinion.

*Decree affirmed in part and in part remanded for modification of the decree and further proceedings not inconsistent with the opinion herein, the appellees to pay the costs of their brief; the appellants to pay the other costs of this appeal.*