552 A.2d 1277

ATTMAN/GLAZER P.B. COMPANY

v.

MAYOR AND ALDERMEN OF ANNAPOLIS.

No. 115, Sept. Term, 1986.

Court of Appeals of Maryland.

Feb. 8, 1989.

Motion for Reconsideration Denied March 28, 1989.

Steven R. Migdal (Manis, Wilkinson, Snider & Goldsborough, Chartered, on the brief) Annapolis, for appellant.

Gary M. Elson, Asst. City Atty. (Jonathan A. Hodgson, City Atty., on the brief), Annapolis, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, COUCH * and McAULIFFE, JJ., CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired, Specially Assigned).

McAULIFFE, Judge.

We are here concerned with the extent to which a municipality may "settle" the appeal of a zoning or similar land use case. We conclude that although a municipality may enter into a binding agreement concerning certain aspects of a land use case on appeal, it may not contract away the exercise of its zoning power.

The property in question is bounded by Northwest, Calvert, and Clay Streets in the City of Annapolis, and is currently improved by a four-story office building. The property has had a rather difficult development history, involving the urban renewal efforts of the city, litigation between the city and the developer, and a cloudy zoning classification picture. The property consists of two parcels, 7D and 17, which were acquired and assembled by the city as a part of an urban renewal project. When originally placed in the city's Urban Renewal Plan,[1] parcel 7D was designated for neighborhood commercial and business use, and parcel 17 for residential use. Attman/Glazer P.B. Company (hereinafter "AG") successfully bid for the right to develop the land, and in 1977 filed an application for a change in the Urban Renewal Plan. Proposing construction

---

* Couch, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Code provisions dealing with urban renewal were codified at Chapter 20A of the Annapolis City Code (1969). Following recodification, the current provisions are now contained in Chapter 2.56 of the Code of the City of Annapolis (1986).

of a commercial office building, AG asked that the two parcels be designated for commercial use and that approval be given for construction.

AG's 1977 application is not in this record. We infer from the records which are before us that AG originally sought two things: a change in the classification of the property in the Urban Renewal Plan, and approval of a conditional use. Precisely what effect a change in classification in the Urban Renewal Plan was intended to have on the underlying zoning classification of the property is not clear. It does not appear that the various use designations approved in the Urban Renewal Plan ever found their way onto the city's zoning map by means of a comprehensive (or other) map amendment. Rather, it appears that at the time, all parties considered the changes made in the Urban Renewal Plan to be fully effective for purposes of development, without the necessity of corresponding changes to the zoning map, and apparently without the necessity of resubdividing the property before construction.

We note that the procedures followed in the amendment of the Urban Renewal Plan were virtually the same as those prescribed for a zoning map amendment. These procedures involved consideration and recommendation by the Annapolis Planning and Zoning Commission, notice to the public, and a public hearing before the ultimate zoning authority, the mayor and aldermen sitting as the city council.[2] For purposes of this case, we need not decide the current zoning classification of this property, or the effect of any inconsistency that may currently exist between the requirements of the city's urban renewal code and its zoning code.[3] Nor need we decide whether the conditional use

---

**2.** Prior to 1985, the name and style of the municipal corporation was "mayor and aldermen of the City of Annapolis." As a result of changes in the city charter, the name of the municipal corporation is now "City of Annapolis."

**3.** At the time the city approved AG's initial request for redesignation, § 22–30(f) of the Code of the City of Annapolis provided that in the

mechanism was properly or necessarily utilized in this case.[4] The parties proceeded on the assumption that reclassification of the property in the Urban Renewal Plan was sufficient in lieu of formal rezoning, and that conditional use approval was required. Indulging those same assumptions in this case allows us to reach the question of a municipality's right to "settle" a zoning appeal, and we therefore proceed on that basis.

AG's initial request was granted, and by Resolution 58–77 the mayor and aldermen amended the Urban Renewal Plan to change the designation of Parcels 7D and 17 to commercial use. The resolution also permitted the erection of a professional office building, on the condition that the owner of the building provide 252 parking spaces. Those spaces could be located on-site, or on other property within 500 feet of the building. By Resolution 66–77, a conditional use for the proposed office building was approved. That condition-

event of an inconsistency between the Urban Renewal Plan and the zoning code, the provisions of the plan would govern. However, that language was repealed by Ordinance 12–81, effective November 17, 1981.

4. The term "conditional use" is not defined in Article 66B of the Maryland Code (1988 Repl.Vol.), which comprises the grant of authority from the State to municipalities to exercise zoning powers. A conditional use is, however, essentially the same as a special exception, which is defined by state law at Article 66B, § 1.00. According to the Annapolis City Code, a conditional use is one which, because of its unique characteristics, cannot properly be classified as a permitted use in any particular district or districts. Accordingly, in addition to the uses that are expressly permitted in each zone, the Annapolis zoning code specifies conditional uses that may be appropriate in that zone if certain criteria are met and appropriate conditions imposed. The problem in this case stems from the fact that an office building is a permitted use in a commercial district, and is neither a permitted nor conditional use in a residential zone. The city suggests that at the time permission was being sought for the construction of this office building, the city code required that the application be treated as if it were a part of a planned development, and thus the conditional use process was required. Although § 2.08 of Article 66B contemplates that the power to hear and decide special exceptions will be reposed in a board of zoning appeals, and the City of Annapolis has created such a board, conditional use applications in the city are decided by the city council.

al use authorization expired when AG was unable to undertake construction within a prescribed time. A new application for conditional use was filed, and by Resolution 1–81 the mayor and aldermen granted a new conditional use, requiring 18 on-site parking spaces and 238 additional parking spaces within 600 feet of the property. The resolution further provided that in lieu of providing some or all of the 238 additional spaces, the owner could make available to the building's tenants or their employees a comparable number of passes for use on the city's shuttle bus system.

Construction of the building commenced, albeit only after AG obtained a writ of mandamus from the Circuit Court for Anne Arundel County directing the city to issue a building permit.[5] Shortly thereafter, AG sought an amendment to the conditional use to permit active use of a portion of a basement which had theretofore been approved only for housing of mechanical equipment. The mayor and aldermen approved the active use of 15,480 square feet of the basement, on condition that AG provide 51 new off-street parking spaces and comply with the parking requirements set forth in Resolution 1–81. One week later, the mayor and aldermen filed a modified resolution, declaring that the new conditions and those remaining from Resolution 1–81 were interdependent and, if any condition of either resolution were declared invalid or modified by any court, the entire conditional use would stand rescinded. AG appealed, contending that the requirement of creating *new* parking spaces was arbitrary, capricious, and impossible to fulfill, and challenging the attempt of the modified resolution to insulate the actions of the mayor and aldermen from judicial review.[6]

---

**5.** The director of planning and zoning had refused to approve the issuance of a building permit, for reasons not apparent in this record.

**6.** The *in terrorem* provision of the modified resolution was subsequently declared invalid by the Circuit Court for Anne Arundel County, and no appeal has been taken from that determination.

The mayor and aldermen, in their capacity as the municipal corporation, were granted leave to intervene, and filed a demurrer and answer. From a memorandum of law filed by AG, we learn that it did not argue that the requirement of providing 51 additional parking spaces was arbitrary. Indeed, such an argument would likely have been futile, because the requirement followed § 22–122(21) of the city zoning code, which required one off-street parking space for each 300 square feet of gross floor area of business and professional office buildings. Rather, AG argued that the requirement of providing 51 *new* spaces within 500 feet of the building was unreasonable and virtually impossible to perform, due to the lack of land in that area which might be purchased and converted to off-street parking. AG argued that it had produced testimony demonstrating the reasonableness and feasibility of developing 51 additional but existing off-street parking spaces. It pointed out that its tenant, the Department of Economic and Community Development, a state agency, required the additional active space in the basement, and that the State could probably be persuaded to release 51 of the 300 spaces it controlled in the county-owned parking garage directly across the street from AG's building. AG claimed the evidence also showed that the average occupancy of the parking garage was 80 percent of capacity, and therefore the allocation of 51 spaces for its building would not adversely impact the public parking in the area. In response, the city pointed to testimony that demonstrated a critical need for off-street parking in the immediate area of AG's building. The city argued that the reasonableness of imposing the condition of 51 new spaces was at least fairly debatable.

Shortly before the appeal was to be heard in the circuit court, AG and the city reached an agreement that was designed to avoid further court proceedings. The parties cannot now agree concerning the precise terms of that agreement. Both parties concur that they agreed to seek a continuance of the court hearing, and that they agreed AG would file a new application for a conditional use. They

also agree that they discussed the feasibility of substituting the following conditions for the requirement of 51 new spaces:

1. AG would procure a release from the State of 25 spaces of the State's 300 space allocation in the county parking garage across the street from the building.

2. AG would pay $75,000 to the city, to be credited to the off-street parking capital improvement budget as a contribution toward eventual parking improvements in the area.

AG contends that the city flatly agreed to approve the application on those conditions, and that the requirement for the filing of a new application was intended to be a mere matter of form. AG finds some succor for this argument in the language employed by the mayor in his memorandum to the aldermen proposing the settlement:

I recommend immediate acceptance of this offer. If accepted, developer will expeditiously apply for a formal amendment of its conditional use to reflect the settlement. In addition, the trial would be postponed until the conditional use is approved at which time developer would dismiss the case, paying the costs.

The city, on the other hand, contends that it agreed only to a postponement of the circuit court hearing to allow AG to attempt to secure an amended conditional use upon the conditions discussed by the parties. It says the mayor and aldermen, acting solely in their capacity as the municipal corporation, thereby signified that they felt the proposed conditions were fair and would likely be approved, but that the mayor and aldermen did not, and in fact could not, enter into a binding agreement that they, in their capacity as the zoning authority, would approve the conditional use on those terms.

The amended conditional use was not granted on the terms contemplated by the parties in their agreement. In fact, when AG presented its revised application to the Planning and Zoning Commission (a body separate from the

mayor and aldermen), that commission refused to make any recommendation.  Acting on the advice of its staff, the commission held that before the application could be approved the property would have to be rezoned, and the zoning ordinance would have to be amended to permit payment into the off-street parking fund as an alternative to providing spaces otherwise required.  The commission said the proposed conditional use was illegal, and therefore it had no jurisdiction to accept it or to act on it.

AG returned to court, and filed in the pending appeal a "Motion to Enforce Settlement Agreement."  Judge James C. Cawood, Jr., after first finding that the parties had entered into a settlement agreement, deferred action on the motion to enforce that agreement.  He held that the Planning and Zoning Commission could not refuse to act on the application, and that AG should be given a reasonable time to secure a court order compelling the commission to proceed.  He reasoned that if the mayor and aldermen should grant the amended conditional use on the terms discussed by the parties, the motion to enforce the agreement would become moot.

The gears of the city's conditional use process were again engaged.  The commission made its recommendation to the city council (comprised of the mayor and aldermen), and that body held a public hearing.  The city council then denied the new application, thus leaving in place the earlier requirement of providing 51 new off-street parking spaces.  Concerning the earlier agreement, the council acknowledged that the mayor and aldermen had reached a "preliminary understanding" with AG, but said that the entire agreement was subject to the zoning process, and that the council was therefore free to exercise its independent judgment on the application.  Additionally, the council found: that the proposed amendment did not conform to existing zoning regulations because 51 spaces were required, and those spaces were required to be on-site; that the city code did not permit monetary remuneration in lieu of required off-street parking;  that the building was constructed on

land which remained in the residential zoning classification and it would be inappropriate to enlarge an unlawful use; that the proposed amendment would be detrimental to the health, safety, and welfare of the public because the area was "woefully lacking" in public parking facilities and any reduction of the 51 new spaces originally required would exacerbate a parking situation that was already over capacity; and, that allocating 25 spaces in the county parking garage to the use of the tenants of AG's building would likely send 25 all-day parkers who then used the garage into the streets, thereby aggravating a difficult parking and traffic congestion problem that had only grown worse since the original requirement of 51 new spaces had been imposed two years before.

AG filed an appeal from the latest denial, and the circuit court consolidated that appeal with the earlier appeal involving Resolution 1–81. In the meantime, a third appeal, involving the action of the city board of appeals in denying a temporary use and occupancy permit to AG, had reached the circuit court, and was consolidated with the other cases for hearing.

Judge Cawood heard the consolidated appeals, including the motion to enforce the settlement agreement. No request was made to the court for leave to introduce testimony bearing on the terms of the agreement, nor was any testimony taken. Judge Cawood held that the city was estopped from using the zoning of the property as a bar to the issuance of an occupancy permit. He also held that unless the existence of the settlement agreement compelled a contrary result, the action of the city council in 1) requiring 51 new parking spaces as a condition to the active use of the basement area, and 2) denying the amendment which would have substituted 25 existing spaces and a $75,000 payment for the 51 space requirement, would be affirmed. Turning to the agreement, Judge Cawood again assumed the existence of a binding settlement agreement, but found that AG had not performed its end of the bargain because it had not obtained from the State a release in perpetuity of

the 25 spaces in the parking garage. The net result was that AG was found to be entitled to continue the use and occupancy of the building in accordance with the conditional use granted by Resolution 1–81, but was denied its request to conduct any active use in the basement area of the building.

AG appealed to the Court of Special Appeals. Although it appealed generally from the dispositions made in the three consolidated cases, AG limited the scope of its appeal by presenting to the intermediate appellate court only the question of whether the circuit court erred in refusing to enforce the settlement agreement. The Court of Special Appeals, in an unreported opinion, affirmed the judgment of the trial court. We granted AG's petition for certiorari, and we now affirm.

As we have indicated, there is a serious disagreement between the parties with respect to the terms of their settlement agreement. Clearly, there was an agreement of some kind, and the objective of the agreement was to settle the controversy. The parties made no attempt to reduce their agreement to writing, and no one has testified concerning what was said. Both sides have relied upon a memorandum sent by the mayor to the eight aldermen, setting forth his understanding of the proposed agreement and requesting their concurrence. We think the memorandum is ambiguous with respect to the terms that are in dispute. Resolution of the ambiguity is not required, however, because the result is the same with either of the two possible constructions.

■ If, as AG contends, the agreement was intended to require the city council to grant an amended conditional use on the conditions specified, the agreement was invalid. Without reaching the contentions of the city that 1) the mayor and aldermen acting in their capacity as the municipal corporation could not bind the mayor and aldermen acting in their capacity as the designated zoning authority, and 2) the action was in violation of the state "sunshine"

law requiring open meetings,[7] we hold that the mayor and aldermen could not by agreement lawfully bind themselves to a future zoning or conditional use decision. We do so on the familiar premise that a municipality may not contract away the exercise of its zoning powers. *Baylis v. City of Baltimore,* 219 Md. 164, 170, 148 A.2d 429 (1959); 10 McQuillin, *Municipal Corporations,* § 29.07 (3d ed. 1981); 2 Anderson, *American Law of Zoning 3d,* § 9.21 (1986); 4 Yokley, *Zoning Law and Practice,* § 25–11 (4th ed. 1979).

AG recognizes the existence of this general principle, but argues that it applies only to cases involving contract or conditional *zoning,* and has no application in cases involving conditional uses. It is true that the principle most frequently has been cited in cases involving the contractual imposition of conditions or restrictions where zoning reclassification has been sought and conditional zoning was not permitted. This Court has uniformly condemned the practice of conditional or contract zoning in the absence of statutory authority for the imposition of conditions. *See, e.g., Mont. Co. v. Nat'l Capital Realty,* 267 Md. 364, 373–75, 297 A.2d 675 (1972) (reliance by zoning authority upon agreement to file covenants imposing limitations upon use invalid as conditional zoning); *Rose v. Paape,* 221 Md. 369, 375–78, 157 A.2d 618 (1960) (municipality cannot attach conditions to property zoned or rezoned if those conditions are not uniform throughout the zoning district); *Baylis v. City of Baltimore, supra,* 219 Md. at 170, 148 A.2d 429 (rezoning based on agreements with owners are invalid); *Wakefield v. Kraft,* 202 Md. 136, 149–50, 96 A.2d 27 (1953) (conditional rezoning not permitted). *And cf. City of Baltimore v. Crane,* 277 Md. 198, 205–06, 352 A.2d 786 (1976) (ordinance granting additional density upon dedication of land not contract or conditional zoning where offered to all similarly situated property owners); *Funger v. Mayor of Somerset,*

---

7. Article 76A, §§ 7–15, Md.Code (1980 Repl.Vol., 1982 Cum.Supp.), now codified at §§ 10–501 thru 10–510 of the State Government Article, Md.Code (1984 Repl.Vol., 1988 Cum.Supp.).

249 Md. 311, 323–29, 239 A.2d 748 (1968) (agreement by
town to make favorable recommendation to county zoning
authority does not violate the general rule because the
zoning authority was not a party to the agreement); *Green-
belt v. Bresler*, 248 Md. 210, 215–17, 236 A.2d 1 (1967)
(same); *Town of Somerset v. Montgomery County*, 229
Md. 42, 50–52, 181 A.2d 671 (1962) (general rule inapplicable
because zoning authority clearly did not impose conditions
or rely upon representation of applicant concerning site
development).

These cases rest, in part, on the rationale that permitting
conditional zoning by contract destroys the uniformity that
is required in each zoning district. As AG points out, this
rationale does not apply when the zoning code specifically
contemplates the imposition of conditions, as in the case of
special exceptions and conditional uses. We conclude, how-
ever, that because one of the several reasons for the
general prohibition against contract or conditional zoning
does not apply in conditional use cases, that does not, *a
fortiori*, mean that an entirely separate reason—the prohi-
bition against contracting away the exercise of zoning pow-
er—is similarly inapplicable. If that were true, where
conditional zoning is specifically permitted by statute [8] the
zoning authority could obligate itself by advance contract to
provide zoning and thereby render meaningless the pre-
scribed zoning procedures. We hold that the sound policy

---

**8.** Conditional zoning, once roundly condemned, appears to be in the
ascendency. In Maryland, the concept has evolved indirectly through
the use of various zoning devices such as planned developments, and
has found at least limited favor with the state legislature. *See* Article
66B, § 4.01(b) permitting a county or municipal corporation to im-
pose certain conditions at the time of zoning or rezoning land, under
certain circumstances. *See also People's Counsel v. Mockard*, 73
Md.App. 340, 343–45, 533 A.2d 1344 (1987); and *Bd. of Co. Comm'rs v.
H. Manny Holtz, Inc.*, 65 Md.App. 574, 579–86, 501 A.2d 489 (1985)
(holding that § 4.01(b) of Article 66B authorizes the imposition of
conditions applicable to structural and architectural character of the
land and improvements thereon, and does not authorize conditional
use rezoning). We need not, and do not, offer an opinion concerning
the intermediate appellate court's interpretation of the scope of
§ 4.01(b).

which prohibits a municipality from contracting away its zoning power is as applicable to special exception and conditional use cases as it is to those involving zoning reclassifications. These closely related functions, often grouped generically under the broad topic of zoning, involve the exercise of the power of land use regulation that was delegated to the city by Article 66B of the Maryland Code. Just as the zoning authority is required to follow procedures mandated by statute, *West Mont. Ass'n v. MNCP & P Com'n,* 309 Md. 183, 186, 522 A.2d 1328 (1987), and to exercise its unconstrained independent judgment in deciding matters of reclassification, so too must the appropriate authority, whether the zoning authority or a duly authorized board of appeals, follow required procedures and exercise independent judgment in deciding requests for special exceptions, conditional uses, or variances. The carefully structured provisions for public notice, public hearings, and, in many cases, required consideration of staff or planning commission recommendations, would be stripped of all meaning and purpose if the decision-making body had previously bound itself to reach a specific result. This principle is not limited to agreements of questionable legality, or to those made in smoke-filled rooms; it applies as well to those made openly, in good faith, and containing terms and conditions that would otherwise be appropriate.

The potential for harm that would be present in the absence of the rule is well illustrated by the facts of this case. AG and the mayor and aldermen undoubtedly acted with the best of intentions in attempting to agree upon conditions that they believed would not only accommodate the needs of the public, but also could be reasonably met by the developer. However, when subjected to the illumination of planning commission recommendations, citizen input, current information, advice of the city attorney, and careful reflection, the conditions once thought appropriate were seen by the zoning authority to be woefully inadequate.

We need not reach the question of whether the conditions agreed upon in this case were themselves legally impermis-

sible. The prohibition against contracting away the exercise of the zoning power applies whether the conditions were valid or invalid. Even if the mayor and aldermen agreed to be bound to the conditions discussed, they had no authority to do so, and the agreement cannot be enforced.

■ AG further suggests that even if the agreement is invalid, we should apply the principle of equitable estoppel to prevent the city from relying upon that invalidity. The short answer to that contention is that a municipality is not estopped to assert its own illegal action. *Permanent Fin. Corp. v. Montgomery Cty.*, 308 Md. 239, 247–50, 518 A.2d 123 (1986); *Salisbury Beauty Schools v. St. Bd. of Cosmetologists*, 268 Md. 32, 63–65, 300 A.2d 367 (1973); *Berwyn Heights v. Rogers*, 228 Md. 271, 279–80, 179 A.2d 712 (1962).

We turn to the alternative possibility—that the agreement between the parties was simply to postpone the trial of the zoning appeal in order to permit AG to attempt to obtain an amended conditional use upon conditions that at first blush appeared to be reasonable to the mayor and aldermen. If indeed that was the agreement of the parties, we find no vice in it. Settlements of controversies are favored. *General Motors Corp. v. Lahocki*, 286 Md. 714, 726, 410 A.2d 1039 (1980); *Chertkof v. Harry C. Weiskittel Co.*, 251 Md. 544, 550, 248 A.2d 373 (1968), *cert. denied*, 394 U.S. 974, 89 S.Ct. 1467, 22 L.Ed.2d 754 (1969). It is not uncommon for the parties in litigation, particularly after each has had an opportunity to carefully review the relevant facts and law, to discover that there may be a common meeting ground between them. Under certain circumstances, a municipality may agree to compromise a contested matter.[9] The city in this case clearly had the authority to enter into an agreement to request a postponement of the judicial hearing and to entertain a new or amended application for conditional use, provided it did not surrender or impair the right and obligation of the city council to inde-

---

9. See the cases collected under the annotation, "Power of city, town, or county or their officials to compromise claim," 15 A.L.R.2d 1359.

pendently and impartially consider the application in accordance with procedures established by law.

If we accept the city's construction of the agreement, which is the construction favored by law because it results in a valid agreement, *Garfinkel v. Schwartzman,* 253 Md. 710, 720, 254 A.2d 667 (1969), the outcome of this case does not change. The agreement was fully performed by both sides; nothing remained to be enforced. AG was entitled to pursue a new application for conditional use, and it did so. When the city council denied the application, AG was entitled to pursue its original appeal, and, if it wished, appeal the rejection of its latest application. It did both, and the Circuit Court for Anne Arundel County affirmed the action of the city council in each case. On appeal to the Court of Special Appeals, and before us, AG did not argue that the actions of the city council were arbitrary, capricious, or without adequate support in the record. Rather, it rested its right to relief upon the proposition that the city council had obligated itself to grant the amended conditional use upon the conditions set forth in the agreement, and upon the notion that it was entitled to judicial enforcement of that obligation. For the reasons previously stated, that contention cannot be sustained.

JUDGMENT AFFIRMED, WITH COSTS.