HENRY W. CONNOR & others *vs.* CITY OF HAVERHILL & others.

Essex.     December 7, 28, 1938. — April 13, 1939.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Municipal Corporations,* Municipal finances, Officers and agents. *Equity Jurisdiction,* To enjoin enforcement of judgment, Petition by ten taxable inhabitants. *Judgment. Fraud.*

Payment of a judgment against a city, entered pursuant to an agreement for judgment authorized by the city council in good faith and in the belief that the plaintiff in fairness should be paid some money but with knowledge that legally his claim against the city was invalid under various provisions of the charter and ordinances, so that any payment to him would be a gratuity, was properly enjoined under G. L. (Ter. Ed.) c. 40, § 53.

PETITION, filed in the Superior Court on June 10, 1938.

A final decree, from which the respondents Morse and Goodwin appealed, was entered by order of *Broadhurst,* J.

*J. M. Albertson & W. S. Soroka,* for the respondents Morse and another, submitted a brief.

*E. B. Karp,* for the petitioners.

QUA, J.  The petitioners, taxable inhabitants of Haverhill, bring this petition under G. L. (Ter. Ed.) c. 40, § 53, to restrain the city and its officers from paying to the respondents Morse and Goodwin the sum of $6,000, being the amount of a judgment entered by agreement in an action by Morse and Goodwin against the city for architectural services alleged to have been rendered by them as partners in preparing plans for an addition to the "Fox School."

The respondents Morse and Goodwin, appealing from a final decree in favor of the petitioners, contend that the judgment embodies a valid settlement or compromise by order of the municipal council of Morse and Goodwin's claim against the city, which they say amounted with interest to about $11,000.

Enough of the findings of the master will be stated to indicate the grounds upon which this decision rests.  In the late summer of 1933 there was under discussion a proposal to build an addition to the "Fox School" with the assistance of the Federal Government under the National Industrial Recovery Act.  It would be necessary to file preliminary sketches with the application for Federal funds. After informal conferences with members of the municipal council, members of the planning board, of whom Morse was one, and other city officers, Morse wrote in behalf of his firm a letter to one of the members of the council offering to perform the architectural work for a total of six per cent "of the cost of the completed project."  Morse knew that this member had no power to make a contract. The contents of the letter were made known to the other members of the council, but no vote was ever taken upon it.  Morse and Goodwin prepared preliminary sketches and a report showing the estimated costs.  An application for funds was made to the Federal Emergency Adminis-

tration . of Public Works, to which were appended copies of the sketches and report. On December 28 the administration voted to grant the loan. Shortly thereafter the mayor, without authority from the council, requested Morse to make complete working plans and specifications. On April 24, 1934, the council voted, in substance, to abandon the project and withdrew the application for a loan. A day or two later Morse exhibited to the council the complete working plans and specifications and demanded as compensation $8,139.60.

No proposal in writing of any contract between Morse and Goodwin and the city was filed in the city clerk's office and no formal vote was passed by the council, both being required by the city charter. St. 1908, c. 574, §§ 21, 22. No requisition was signed by the commissioner or board in charge of the department and approved by a majority of the council, as required by Part 6, §§ 1 and 2, of the city ordinances. Requirements possibly alternative were likewise not met. The school committee did not approve the complete working plans and specifications as required by § 35 of the charter. See also G. L. (Ter. Ed.) c. 43, § 34. The planning board did not examine and report upon them, as required by the ordinance. The Federal Government never made any loan. The plans and specifications were not used. The addition to the school was not built. It is not contended that there was any valid contract to pay the architects for the plans or for their work in making them.

In November, 1935, Morse and Goodwin brought in the Superior Court an action against the city for their services. At the trial of that action in November, 1937, the weaknesses of their claim appeared, and a verdict was directed for the city. Morse and Goodwin filed exceptions. The city solicitor advised the mayor that in his opinion the exceptions would not be sustained, although he "allowed the possibility" that the verdict might be set aside. He refused to advise a settlement. Four previous city solicitors had successively advised the mayor that Morse and Goodwin had no legal claim. Nevertheless, on May 26,

1938, while the exceptions were still pending, the municipal council (which included the mayor), with knowledge of the solicitor's opinion, passed an order purporting to ratify all the acts of the officers and agents of the city relative to the plans and specifications and directing the city solicitor to "adjust the suit" by entering an agreement for judgment for Morse and Goodwin in the sum of $6,000. Such agreement was filed, and judgment was entered. The order of May 26 was not allowed to remain on file in the city clerk's office for one week before it was passed, as is required by St. 1908, c. 574, § 22, in the case of an order "making or authorizing the making of any contract involving a liability on the part of the city in excess of two thousand dollars." The mayor refused to vote for this order unless all the aldermen would vote for it. An assurance of a unanimous vote "seemed necessary to them before they would act." When the order was passed, the members of the council "believed that the architects did not have a valid legal claim against the city for the reason that whatever was done did not comply with the statutory provisions and ordinances," but "they did believe strongly that some compensation ought to be given to the architects for the work they had done and the expense they had incurred." They "did not believe that there was a reasonable probability that the architects would ultimately recover" in their action, but "they did believe, apart from legal technicalities, that the architects had rendered their said services in good faith and in expectation of payment, and that by ordinary standards of business fairness they should be compensated for their services." They considered $6,000 to be "reasonable compensation." They "were not arbitrary or fraudulent but acted upon an honest conviction of what they deemed to be a fair solution of the problem." They believed that the reference to ratification in the order "would validate their act from a legal point of view."

We do not consider whether this case could be decided upon the somewhat narrow ground that the order of May 26, 1938, upon which the alleged settlement was founded, was not itself legally adopted because of the failure to file

it in advance as required by the charter.  *Merrill* v. *Lowell*, 236 Mass. 463.  On all the facts found we cannot agree with the appellants that the order, even if the manner of its adoption had been free from defect, would have effected a compromise in good faith of a disputed claim.  See *Prout* v. *Pittsfield Fire District*, 154 Mass. 450.  By May, 1938, very little of substance was left in the claim of Morse and Goodwin.  It was almost self evident that conditions precedent to the incurring of a valid obligation imposed by the charter and ordinances had not been observed.  The city had been advised repeatedly that the claim was not valid. After a trial a verdict had been directed in its favor.  Morse and Goodwin had performed none of the work of supervision, to which in their original letter they had allocated about a third of their total expected fee.  Yet the council voted to give them approximately three quarters of the amount of their original demand or more than half of their total claim, if interest at six per cent from the date of demand were added.  The master's findings, reduced to their lowest terms, are that the members of the council themselves believed that Morse and Goodwin did not have a valid claim and made no attempt to estimate the chances of recovery; but that they thought the law too severe and that Morse and Goodwin ought to be paid fair compensation for their work in spite of the failure to perform legal conditions; and that they proceeded to act upon this theory. This was making a gift, not a settlement.  It was therefore beyond the power of the council.  *Matthews* v. *Westborough*, 131 Mass. 521;  *S. C.* 134 Mass. 555.  *Whittaker* v. *Salem*, 216 Mass. 483.  *Jones* v. *Natick*, 267 Mass. 567. See cases collected in *Horrigan* v. *Mayor of Pittsfield*, 298 Mass. 492, 497.  If we assume that the case of *Friend* v. *Gilbert*, 108 Mass. 408, cited by the appellants, would be decided the same way today, it must be regarded as distinguishable on the ground stated in *Whittaker* v. *Salem*, *supra*, at page 485.

The fact that the members of the council honestly believed that they could legally make such a gift and that it was right and proper to do so does not give validity to the

gift. The strong safeguards which recent legislation both by statute and by municipal ordinance has erected to protect public treasuries are not to be thrust aside or evaded because public officers believe in particular instances that their operation is harsh. It is only through strict application to particular instances that the system as a whole can be made effective. *Flood* v. *Hodges,* 231 Mass. 252, 257, 258. *Simpson* v. *Marlborough,* 236 Mass. 210. *Merrill* v. *Lowell,* 236 Mass. 463, 466. *Morse* v. *Boston,* 253 Mass. 247, 254. *Safford* v. *Lowell,* 255 Mass. 220, 227. *McHenry* v. *Lawrence,* 295 Mass. 119, 122. *Continental Construction Co.* v. *Lawrence,* 297 Mass. 513, 515. *Fluet* v. *McCabe,* 299 Mass. 173, 178.

The position of the appellants is not strengthened by the fact that judgment has been entered in their action in pursuance of the vote of the municipal council. Before the judgment was entered the petitioners as taxpayers had a statutory right in equity to prevent an illegal payment. They cannot be deprived of that right by the collusive or fraudulent entry of a judgment in an action in which they could not be heard. In proper instances a court of equity will relieve third parties against the consequences of such a judgment. In *Downs* v. *Fuller,* 2 Met. 135, this court said, at page 138, "If, for instance, a judgment be obtained by fraud and covin between the parties, with the intent to defeat the title of a third party, the latter may plead the matter in avoidance of the judgment." *Vose* v. *Morton,* 4 Cush. 27, 31. *Fall River* v. *Riley,* 140 Mass. 488, 489. *Safford* v. *Weare,* 142 Mass. 231. *Habib* v. *Evans,* 222 Mass. 480, 483. *Noyes* v. *Noyes,* 233 Mass. 55, 62. *Wilder* v. *Orcutt,* 257 Mass. 100. *Byron* v. *Concord National Bank,* 299 Mass. 438, 444. The principle is stated with the citation of many cases in 34 C. J. at page 526. Even as between the parties equity will in some circumstances relieve against a judgment obtained by fraud. *Currier* v. *Esty,* 110 Mass. 536, 544. *Amherst College* v. *Allen,* 165 Mass. 178. *Brooks* v. *Twitchell,* 182 Mass. 443. *Keyes* v. *Brackett,* 187 Mass. 306. *Nesson* v. *Gilson,* 224 Mass. 212. *Joyce* v. *Thompson,* 229 Mass. 106, 108.

The principle just stated applies to this case, even though there was no intent to commit a fraud in the every day sense of that word. The attempt to defeat the statutes and the ordinances by means of a gift was constructively fraudulent. The consent judgment was a means used in carrying out that attempt. The purpose of the statutes and ordinances cannot be thwarted in this manner. It has been so held where this precise question has arisen. *Green* v. *Hutsonville Township High School District No. 201,* 356 Ill. 216. *Thomas Kane & Co.* v. *Independent School District of Rock Rapids,* 82 Iowa, 5. *Beyer* v. *Crandon,* 98 Wis. 306. See *Williams* v. *Fairmount School District,* 21 N. D. 198, 204; *Union Bank of Richmond* v. *Commissioners of Oxford,* 119 N. C. 214, 226; *State* v. *DeMattos,* 88 Wash. 35, 44; *Balch* v. *Beach,* 119 Wis. 77, 87 *et seq.; Kelley* v. *Milan,* 127 U. S. 139, 159; *Commissioners of Oxford* v. *Union Bank of Richmond,* 96 Fed. 293, 297.

*Decree affirmed with costs.*