671 A.2d 1

## MONTGOMERY COUNTY, Maryland et al.

### v.

## REVERE NATIONAL CORPORATION, INC.

**No. 118, Sept. Term, 1994.**

Court of Appeals of Maryland.

Feb. 6, 1996.

368

Frank E. Couper, Senior Assistant County Attorney, (Marc P. Hansen, Acting County Attorney; Alan M. Wright, Senior Assistant County Attorney, on brief), Rockville, for Petitioners.

Walter E. Diercks (Darrin N. Sacks, Eric M. Rubin, Rubin, Winston, Diercks, Harris & Cooke, on brief), Washington, DC, for Respondent.

Argued before ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

ELDRIDGE, Judge.

The issue in this case is whether Montgomery County is bound by the provisions of a settlement agreement incorporated in a circuit court judgment. The agreement, ending sixteen years of litigation between the County and the owner of a billboard company, granted to the owner the right to maintain its billboards within the County for a period of ten years, despite a County zoning regulation prohibiting all billboards. Montgomery County contends that the agreement was void from its inception because it impermissibly undermined legislative and executive discretion in the enactment and enforcement of the County's zoning regulations.

## I.

In 1968, the Montgomery County Council, sitting as a district council, amended its zoning regulations concerning outdoor signs and billboards. The new regulatory language

**370**

governed the placement, height and width of billboards within the County. The 1968 regulations provided that any existing billboards not conforming with the new standards were required to be removed at the end of a period of two years from the effective date of the regulations or four years from the date the billboards were erected, whichever occurred later. After the expirations of the time periods provided for in the regulations, controversies arose between Montgomery County and Rollins Outdoor Advertising, Inc., over billboards owned by Rollins. Montgomery County contended that the billboards did not comply with the standards set forth in the 1968 regulations and that they should be removed.

In 1974, Rollins filed an action against Montgomery County, the County Executive and the Council,[1] in the Circuit Court for Montgomery County, challenging the validity of the 1968 billboard regulations and seeking injunctive and declaratory relief.[2] The bill of complaint alleged that Rollins, which operated and maintained billboards in Montgomery County, had been denied permission to erect a new billboard and that the denial was "based upon the discriminatory setback provisions" of the 1968 regulations.[3] The bill of complaint also alleged that Rollins had been ordered, without an offer of just compensation, to remove numerous existing billboards which did not conform to the location specifications set forth in the 1968 regulations.

---

1. Hereinafter, the defendants will be referred to collectively as "Montgomery County," or simply as "the County."

2. After the suit was filed in 1974, Rollins was sold to Reagan Outdoor Advertising, Inc., which was later sold to Revere National Corporation. Revere, the named party in the present proceeding, is the successor-in-interest to Rollins and Reagan.

3. The setback provisions stated:
 "No billboard shall be closer than one hundred (100) feet to any property line nor located closer than six hundred sixty (660) feet to the right-of-way line of any highway which is part of the interstate highway system, nor closer than two hundred (200) feet to the right-of-way line of any other street or road."

Rollins asserted that Montgomery County's enactment and enforcement of the 1968 regulations violated Articles 17 and 24 of the Maryland Declaration of Rights,[4] as well as the Fourteenth Amendment to the United States Constitution. Specifically, Rollins maintained that the billboard regulations constituted prohibited retrospective legislation, that they violated "substantive" due process and equal protection principles, and that they deprived Rollins of property without just compensation.

In 1986, while the above-described litigation was still pending, the district council amended the zoning regulations to prohibit all billboards within the County.[5] Neither the 1986 amendment, nor the 1968 regulations, provided for compensation to the owners of billboards. Rollins amended its bill of complaint, adding contentions that the County's ban on billboards violated state statutes mandating just compensation when a governmental subdivision requires the removal of billboards, as well as Article III, § 40, of the Maryland Constitution.[6] Rollins also maintained that Montgomery

---

**4.** Article 17 of the Maryland Declaration of Rights states:

"That retrospective Laws, punishing acts committed before the existence of such Laws, and by them only declared criminal, are oppressive, unjust and incompatible with liberty; wherefore, no *ex post facto* Law ought to be made; nor any retrospective oath or restriction be imposed, or required."

Article 24 of the Declaration of Rights states:

"That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

At the time Rollins's bill of complaint was filed in 1974, the present Article 24 of the Declaration of Rights had been numbered Article 23. We shall use the current numbering.

**5.** Section 59–F–1.65 of the Montgomery County code, as adopted by the district council in 1986, stated:

"Commercial signs or structures that advertise products or businesses not connected with the site or building on which they are located are prohibited."

**6.** Rollins relied on Maryland Code (1957, 1994 Repl.Vol.), Art. 25, § 122E, which states as follows:

"**§ 122E. Compensation for removed outdoor advertising sign.**

County's regulations violated the Fifth and Fourteenth Amendments to the United States Constitution by denying just compensation to Rollins and violated the First Amendment to the United States Constitution by restricting Rollins's ability to disseminate speech.

In April 1990, sixteen years after the filing of the original bill of complaint, Rollins's successor-in-interest, Reagan Outdoor Advertising, Inc., entered into a written settlement agreement with Montgomery County. In addition to being signed by the county attorney and county and Reagan officials, the agreement was signed by the trial judge below the words, "SO ORDERED." The circuit court's docket entry for April 11, 1990, reads as follows: "Stipulated Consent Agreement (McKenna, J.) Granted...."

The settlement agreement permitted Reagan to continue "maintain[ing] within the County ... forty-seven [billboards]" for a period of ten years. Reagan could replace and relocate

---

"(a)(1) In this section the following words have the meanings indicated.

(2)(i) 'Fair market value' means a value, determined by a schedule adopted by the Department of Transportation, that includes the value of integral parts of an outdoor advertising sign, less depreciation.

(ii) 'Fair market value' does not include a value for loss of revenue.

(3)(i) 'Outdoor advertising sign' means an off-premises outdoor sign:

1. Commercially owned and maintained; and

2. Used to advertise goods or services for sale in a location other than that on which the sign is placed.

(ii) 'Outdoor advertising sign' includes signs composed of painted bulletin or poster panel, and usually referred to as billboards.

(b) A county or municipality shall pay the fair market value of an outdoor advertising sign, removed or required to be removed by the county or municipality, that was lawfully erected and maintained under any State, county, or municipal law or ordinance."

Rollins also relied on Maryland Code (1977, 1993 Repl.Vol.), § 8–737 of the Transportation Article, which also prohibits a governmental subdivision from requiring the removal of a billboard contiguous to a federal aid primary highway without paying just compensation.

Article III, § 40, of the Maryland Constitution states:

"The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation."

billboards to a new location if either "(i) a lease for the premises on which a sign is located is not to be continued, or (ii) an outdoor advertising structure has been destroyed or has deteriorated to the point that it is no longer in a safe condition." Relocation of billboards was limited to not "more than five signs within any calendar year," with Reagan having the sole discretion as to which signs were to be relocated. The agreement placed certain restrictions on where billboards could be relocated but stated that "in no event shall the County utilize procedures or fees to impair Reagan from exercising its rights under this Agreement." In the contract, the parties expressly agreed upon the "dismissal of any and all pending litigation between the County and Reagan...." Finally, the agreement stated that "[i]n the event either party fails to perform its obligations under this Agreement the other party shall be entitled to seek an order of the Court to enforce the Agreement...."

In March 1992, Revere National Corporation, the successor-in-interest to Reagan, sought the County's permission to construct a replacement billboard pursuant to the provisions of the settlement agreement. The request was denied in May 1992 because, according to the County, the settlement agreement entered into by the parties was "void *ab initio,*" and Revere was requesting "to build a prohibited sign," whereas the county regulations banned all billboards.

Upon the County's denial of its request, Revere filed in the Circuit Court for Montgomery County a "Motion to Adjudicate Defendants In Contempt of Court and For An Order to Enforce Stipulated Consent Agreement." After setting forth the pertinent facts, Revere's Motion asserted that the defendants "have violated the April 11, 1990 Order of this Court." Revere sought to have the defendants adjudicated in contempt, sought an order requiring the defendants to comply with the settlement agreement "which was entered as an order of the [circuit] Court," and requested compensatory damages.

In response, the County filed a "Motion To Vacate The Stipulated Consent Agreement of April 11, 1990," as embodied in the court's order. The County asserted that the settlement agreement "is void *ab initio* because it purports to permit what the Montgomery County Zoning Ordinance prohibits, namely the existence of 47 billboards in Montgomery County." The County went on to state that it "has no authority to make such an agreement or to consent to a court order which violates the Zoning Ordinance's prohibition on billboards . . . ." The County requested the court to find that the settlement agreement "is void *ab initio* and order that it be vacated." The County filed a separate answer to Revere's motion, also asserting, *inter alia*, that the settlement agreement was void.

The circuit court, after a hearing, denied the County's motion to vacate the settlement agreement and, without ruling on Revere's motion, stated that the denial of the County's motion to vacate the settlement agreement, as embodied in the 1990 court order, was final and appealable. Montgomery County then noted an appeal to the Court of Special Appeals. In April 1993, the Court of Special Appeals, in an unreported opinion, dismissed the appeal on the ground that the appeal was premature because the trial court had not yet ruled on the pending motions from Revere and thus a final judgment did not exist. *See* Maryland Rule 2–602(a).

After receiving additional memoranda and holding another hearing, the circuit court on November 18, 1993, entered an order granting the County's motion to vacate the settlement agreement and denying Revere's motion to enforce the agreement and to hold the defendants in contempt. The circuit court expressed the view that the April 11, 1990, order approving the settlement agreement was not a final judgment terminating the action brought by Revere's predecessor in 1974, and that, therefore, the April 1990 order remained subject to revision at anytime under Maryland Rule 2–602(a).[7] The

---

7. Rule 2–602(a) states as follows:

"(a) **Generally.**—Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates

circuit court further held that the settlement agreement and April 1990 order should be vacated because Montgomery County had no power to enter into an agreement contrary to its zoning regulations.

Revere appealed, and the Court of Special Appeals reversed the circuit court's order in another unreported opinion. The Court of Special Appeals held that the settlement agreement, as embodied in the April 1990 circuit court order, constituted a final judgment terminating the action instituted by Revere's predecessor in 1974. The intermediate appellate court further held that Montgomery County had not shown any valid basis to set aside the 1990 judgment. The Court of Special Appeals explained:

"[Montgomery County] maintains that it had no ability to agree to the terms contained in the agreement because the County Executive and executive branch officials who are obligated to enforce the Zoning Ordinance cannot implement an agreement that violates the Zoning Ordinance. We shall not address that contention, however; it is of no consequence in this case.

"When an agreement is incorporated into an enrolled decree, an attack may not be made upon the agreement without simultaneously challenging the validity of the decree.... Inasmuch as the Stipulated Consent Agreement was incorporated into the court's judgment, appellee's attack in the lower court was upon an enrolled decree. To set aside an enrolled decree, it is necessary to demonstrate fraud, mistake or irregularity. Maryland Rule 2–535.

\* \* \* \* \* \*

---

fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:

 (1) is not a final judgment;

 (2) does not terminate the action as to any of the claims or any of the parties; and

 (3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties."

"In summary, since the order vacated was a final, enrolled judgment, the court erred in vacating it, absent fraud, mistake, or irregularity, on the grounds that the agreement incorporated therein was void *ab initio* because one of the parties had no authority to enter into it."

Montgomery County filed in this Court a petition for a writ of certiorari which we granted. *Montgomery County v. Revere National Corp.*, 336 Md. 705, 650 A.2d 295 (1994). Montgomery County argues that the Court of Special Appeals erred in holding that the April 11, 1990, order constituted a final judgment. The County asserts that the April 1990 order did not dispose of all the underlying issues in the case, was therefore not final, and is subject to revision at any time pursuant to Rule 2–602(a)(3). Alternatively, Montgomery County contends that if the April 1990 order was a final judgment, the judgment can still be set aside because *ultra vires* acts of a county or municipality, even if embodied in a final court judgment, are "void." Finally, the County argues that the settlement agreement, as incorporated in the April 1990 order, exceeds the authority of Montgomery County because it violates the County's zoning regulation that prohibits all billboards. Thus, according to the County, the circuit court did not err in vacating the 1990 order.

Revere, on the other hand, asserts that the Court of Special Appeals correctly held that the April 1990 order was a final judgment. Moreover, because the April 1990 order was a final judgment, Revere contends that the circuit court was prohibited from revising the judgment absent fraud, mistake, or irregularity, and that there was no fraud, mistake or irregularity in the present case. *See* Rule 2–535. Finally, Revere argues that the County did not exceed its authority in entering into the settlement agreement.

## II.

We shall first address the issue of whether the April 1990 order constituted a final judgment. If the April 1990 order was not a final judgment, it "is subject to revision at any time

before the entry of a [final] judgment. . . ." Rule 2–602(a)(3). If the April 1990 order was a final judgment, however, it would ordinarily be subject to revision only during a thirty-day period after the entry of the order on April 11, 1990. Rule 2–535(a). After the thirty-day period, Rule 2–535(b) authorizes revision of a judgment only "in case of fraud, mistake or irregularity." [8]

The County maintains that the settlement agreement, as incorporated in the April 1990 court order, "did not resolve any of the constitutional or statutory issues raised in the Amended complaint" and "granted none of the relief prayed for." (County's brief in this Court at 33–34). For this reason, according to the County, the April 1990 order was not final. A similar argument was recently rejected by this Court in *Horsey v. Horsey*, 329 Md. 392, 401–402, 620 A.2d 305, 310 (1993), where we stated:

"Contrary to the view expressed by the defendant . . . in this case, a trial court's order sometimes may constitute a final appealable judgment even though the order fails to settle the underlying dispute between the parties. Where a trial court's order has 'the effect of putting the parties out of court, [it] is a final appealable order.' *Houghton v.*

---

8. Maryland Rule 2–535 provides as follows:

**"REVISORY POWER**

(a) **Generally.**—On motion of any party within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment and, if the action was tried before the court, may take any action that it could have taken under Rule 2–534.

(b) **Fraud, Mistake, Irregularity.**—On motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake or irregularity.

(c) **Newly Discovered Evidence.**—On motion of any party filed within 30 days after entry of judgment, the court may grant a new trial on the ground of newly-discovered evidence that could not have been discovered by due diligence in time to move for a new trial pursuant to Rule 2–533.

(d) **Clerical Mistakes.**—Clerical mistakes in judgments, orders, or other parts of the record may be corrected by the court at any time on its own initiative, or on motion of any party after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed by the appellate court, and thereafter with leave of the appellate court."

*County Comm'rs. of Kent Co.*, 305 Md. 407, 412, 504 A.2d 1145, 1148 (1986), and cases there cited. *See, e.g., Wilde v. Swanson*, 314 Md. 80, 85, 548 A.2d 837, 839 (1988) ('An order of a circuit court . . . [may be] a final judgment without any adjudication by the circuit court on the merits'); *Doehring v. Wagner*, 311 Md. 272, 275, 533 A.2d 1300, 1301–1302 (1987) (trial court's order 'terminating the litigation in that court' was a final judgment); *Walbert v. Walbert*, 310 Md. 657, 661, 531 A.2d 291, 293 (1987) (circuit court's unqualified order was a final judgment because it 'put Denise Walbert out of court, denying her the means of further prosecuting the case at the trial level'); *Houghton v. County Com'rs of Kent Co.*, 307 Md. 216, 221, 513 A.2d 291, 293 (1986); *Concannon v. State Roads Comm.*, 230 Md. 118, 125, 186 A.2d 220, 224–225 (1962), and cases there cited."

*See also Moore v. Pomory*, 329 Md. 428, 432, 620 A.2d 323, 325 (1993) (dismissal without prejudice, although not an "adjudication on the merits," was a final and appealable judgment).

■ Thus, an order entered on the docket pursuant to Rule 2–601, and having the effect of terminating the case in the circuit court, is a final judgment. Montgomery County's position, that all of the issues and claims in a case must be resolved on the merits in order that there be a final judgment, would undermine the effectiveness of settlement agreements as a mechanism for ending litigation.

It is clear that, upon the entry of the settlement agreement as an order of the court on April 11, 1990, the case begun by Revere's predecessor in 1974 was over. The settlement agreement, which comprises the substance of the April 1990 order, discloses that the parties intended to terminate over sixteen years of litigation. There was nothing further for the court to resolve after the agreement was executed and entered as an order. Section 4(a) of the agreement specifies that, "[i]n consideration of the Agreement reached herein, Reagan and the County hereby release each other from any claims or obligations which arise from the complaint in the above-captioned matter." Section 5(a) of the agreement states that

agreement becomes effective "upon execution . . . and incorporation of th[e] Agreement into a final judgment. . . ." The parties agreed to the "dismissal of any and all pending litigation between the County and Reagan."

Moreover, in a real sense the agreement did dispose of the claims and issues raised by the parties. In lieu of the relief which it sought in the litigation, namely having the challenged zoning regulations invalidated under state statutes and/or on constitutional grounds and receiving compensation or damages, the billboard company received the right to maintain its 47 existing billboards for a ten-year period. Although the County did not receive a judicial ruling on the validity of the regulations, nevertheless the County did not have to pay compensation, was able to limit the billboard company to 47 billboards, and could fully implement the ban on the company's billboards after the ten-year period. The settlement agreement was a typical compromise with respect to the claims, issues, and positions of the parties. The billboard company gave up its claims for relief against Montgomery County in return for what it received under the agreement.

Therefore, we agree with the Court of Special Appeals that the April 11, 1990, order was a final judgment. Moreover, we agree with the Court of Special Appeals that there was no fraud, mistake or irregularity, within the meaning of Rule 2–535(b), so as to authorize revision of the judgment under that rule. *See, e.g., Tandra S. v. Tyrone W.,* 336 Md. 303, 315–318, 648 A.2d 439, 445–446 (1994); *Autobahn Motors v. Mayor & City Council of Baltimore,* 321 Md. 558, 583 A.2d 731 (1991); *Hamilos v. Hamilos,* 297 Md. 99, 465 A.2d 445 (1983); *Weitz v. MacKenzie,* 273 Md. 628, 331 A.2d 291 (1975); *Schwartz v. Merchants Mort. Co.,* 272 Md. 305, 322 A.2d 544 (1974); *Household Finance Corp. v. Taylor,* 254 Md. 349, 254 A.2d 687 (1969), and cases there cited.

### III.

Montgomery County contends that, even if the April 11, 1990, order was a final judgment, the County exceeded its

legal authority in entering into the settlement agreement and that this is a valid basis for vacating the judgment. The County argues that a final judgment is not binding or preclusive, and is subject to collateral challenge, when a county or municipality exceeds its legal authority in entering into a settlement agreement that is incorporated in a final judgment.

The cases have recognized certain unusual and narrowly limited situations when final judgments based on consent of the parties, although not subject to revision under rules like Maryland Rule 2–535, have been deemed non-preclusive or subject to collateral attack. *See, e.g., Green v. Sollenberger,* 338 Md. 118, 131, 656 A.2d 773, 779 (1995) (final adoption decree, not authorized by adoption statutes, is subject to collateral attack and voidable); *Varsity Amusement Company v. Butters,* 155 Colo. 330, 339, 394 P.2d 603, 607 (1964) ("a judgment entered by agreement or consent does not have a [res judicata] effect where to give that effect would render impotent another important public policy"); *Blazek v. City of Omaha,* 232 Neb. 562, 565, 441 N.W.2d 205, 207 (1989) ("Except where an important public policy would be violated, judgments entered by agreement or consent are generally given a conclusive effect and are res judicata.")

The leading case in this area appears to be *Kelley v. Town of Milan,* 127 U.S. 139, 8 S.Ct. 1101, 32 L.Ed. 77 (1888). There, earlier litigation between the Town and holders of the Town's bonds had been terminated when the Town's officials consented to a decree adjudging the bonds to be valid obligations of the Town. In a subsequent lawsuit between the Town and the bondholders, the Supreme Court concluded that the Town was not bound by the earlier judgment. The Court held that, because the Town lacked authority under the laws of Tennessee to issue the bonds, the Town officials had no right to bind the Town by a settlement agreement incorporated in a final judgment. The Supreme Court explained (127 U.S. at 159, 8 S.Ct. at 1111, 32 L.Ed. at 85):

"The declaration of the validity of the bonds, contained in the decree, was made solely in pursuance of the consent to that effect contained in the agreement signed by the [par-

ties]. The act of the Mayor in signing that agreement could give no validity to the bonds, if they had none at the time the agreement was made. The want of authority to issue them extended to a want of authority to declare them valid. The Mayor had no such authority. The decree of the court was based solely upon the declaration of the Mayor, in the agreement, that the bonds were valid. . . .

"The adjudication in the decree cannot, under the circumstances, be set up as a judicial determination of the validity of the bonds. . . . This was not the case of a submission to the court of a question for its decision on the merits, but it was a consent in advance to a particular decision . . . [which] gave life to invalid bonds. . . ."

Consequently, under the *Kelley* principle, the act of placing a settlement agreement made by a local government in the form of a court judgment, in an effort to give it the force and effect of a final judgment, will not cure the lack of fundamental power in the governmental entity to make the agreement.

The cases, in considering whether local governments are bound by final consent judgments reflecting agreements which the governments had no authority to make, have generally reached the same conclusion as *Kelley v. Town of Milan, supra,* although the courts have used various approaches and reasons. Several cases rely on public policy. *See, e.g., Blazek v. City of Omaha, supra,* 232 Neb. at 565, 441 N.W.2d at 207. One court has viewed a final judgment embodying a governmental settlement agreement as "constructive fraud" when the officials entering into the agreement lack the authority to bind the municipality as to matters contained therein. *See, Connor v. Morse,* 303 Mass. 42, 47–48, 20 N.E.2d 424, 426–427 (1939). Another court has theorized that, since governmental officials are trustees of the municipal entity, and thus represent the citizens of that entity, their lack of authority as to matters agreed upon in a settlement agreement cannot be binding on their trustors, even if incorporated in a final judgment. *See, Union Bank v. Commissioners of Oxford,* 119 N.C. 214, 226, 25 S.E. 966, 969 (1896) ("when parties act in a representative

capacity, such judgments do not bind the *cestuis que trustent* unless the trustees had authority to act . . .").

A number of cases have simply stated that a municipality's lack of authority regarding the matters stipulated in a settlement agreement incorporated in a final judgment is a sufficient basis for either vacating a judgment or not applying the doctrine of res judicata. *See, e.g., State v. Great Northern Ry. Co.*, 134 Minn. 249, 256, 158 N.W. 972, 975 (1916) ("The parties could not accomplish [pursuant to a consent judgment] what they had absolutely no power to accomplish in any manner . . ."); *Martin v. Territory*, 5 Okla. 188, 48 P. 106 (1897); *Mellette County v. Arnold*, 76 S.D. 210, 214, 75 N.W.2d 641, 643 (1956) ("a consent judgment in which officials representing a county or other governmental agency assume obligations against it unauthorized by law is void"); *Coolsaet v. City of Veblen*, 55 S.D. 485, 490, 226 N.W. 726, 729 (1929) ("consent decree was not beyond the power of the city's officials and attorneys"). As explained by the Supreme Court of Minnesota in *City of St. Paul v. Chicago, St. P., M. & O. Ry. Co.*, 139 Minn. 322, 326, 166 N.W. 335, 336–337 (1918),

> "[a] judgment against a municipality, not rendered as the judicial act of a court, but entered pursuant to a stipulation of the officers of the municipality, is of force and effect only so far as such officers had authority to bind the municipality. The fact that by consent of the municipal officers an agreement or stipulation made by them has been put in the form of a judgment, in an attempt to give it the force and effect of a judgment does not cure a lack of power in the officers to make it, and if such power be lacking the judgment as well as the stipulation is void."

Regardless of the various theories employed, underlying these decisions is the recognition that the fundamental public policy of a state may sometimes require that a final consent judgment be vacated or not given preclusive effect.

We need not in the present case, however, explore or decide the scope and limits, under Maryland law, of the principles discussed in *Kelley v. Town of Milan, supra*, and the other

above-cited cases. We shall assume, *arguendo*, that it would have been proper to vacate the settlement agreement and judgment of April 11, 1990, if the agreement were clearly *ultra vires* as contended by Montgomery County. Nevertheless, for the reasons set forth in Part IV below, we do not agree that the substance of the agreement was clearly *ultra vires*.

## IV.

### A.

Before addressing Montgomery County's argument that the April 1990 settlement agreement exceeded the County's authority, it would be useful to review certain general principles of Maryland law concerning zoning in Montgomery County and contracts of local governments.

Unlike most other home rule chartered counties in Maryland which receive their basic zoning authority from Article XI–A of the Maryland Constitution, the Express Powers Act, Code (1957, 1994 Repl.Vol.), Art. 25A, § 5(x), and their county charters, the exclusive source of Montgomery County's zoning authority is the Regional District Act, Code (1957, 1993 Repl. Vol., 1995 Supp.), Art. 28, § 8–101 *et seq. See, e.g., Mossburg v. Montgomery County, Md.*, 329 Md. 494, 502–503, 620 A.2d 886, 890 (1993); *Chevy Chase View v. Rothman*, 323 Md. 674, 685, 594 A.2d 1131, 1136 (1991). *See also Northampton v. Pr. George's Co.*, 273 Md. 93, 327 A.2d 774 (1974); *Pr. George's Co. v. Md.–Nat'l Cap.*, 269 Md. 202, 306 A.2d 223, *cert. denied*, 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473 (1973).[9]

■ The Regional District Act specifies that the Montgomery County Council, sitting as a district council, "may by ordinance adopt and amend the text of the zoning ordinance...." Art. 28, § 8–101(b)(2). The Regional District Act sometimes refers to the zoning enactments of a district council

---

9. Code (1957, 1995 Repl.Vol.), Art. 66B, relating to zoning, is generally not applicable to chartered counties. *See* Art. 66B, § 7.03.

as "ordinances," sometimes refers to them as "regulations," and sometimes uses the phrase "ordinance regulations" (*e.g.,* § 8–101(c)). The zoning enactments of the district council in Montgomery County are no longer subject to the approval or veto of the County Executive, Ch. 643, § 1, of the Acts of 1992.[10] Thus, the district council's zoning enactments do not constitute legislation within the meaning of Article XI–A of the Maryland Constitution and the Montgomery County Charter. *See Biggs v. Md.–Nat'l Cap. P. & P. Comm'n,* 269 Md. 352, 354–355, 306 A.2d 220, 222 (1973) (zoning enactment of a district council "was not subject to the Charter provisions respecting referendum and emergency legislation"). Instead, "when it sits as the District Council in a zoning matter the County Council is an 'administrative agency'. . . ." *Co. Council v. Carl M. Freeman Assoc.,* 281 Md. 70, 74, 376 A.2d 860, 862 (1977). *See also Mont. Co. v. Woodward & Lothrop,* 280 Md. 686, 711, 376 A.2d 483, 497 (1977), *cert. denied,* 434 U.S. 1067, 98 S.Ct. 1245, 55 L.Ed.2d 769 (1978); *Mont. Co. v. Nat'l Capital Realty,* 267 Md. 364, 376, 297 A.2d 675, 681 (1972); *Hyson v. Montgomery County,* 242 Md. 55, 67, 71–72, 217 A.2d 578, 585–586, 588 (1966).

■ Turning to government contracts generally, under Maryland law counties and municipalities are normally bound by their contracts to the same extent as private entities. *See, e.g., Fraternal Order of Police v. Baltimore County,* 340 Md. 157, 665 A.2d 1029 (1995); *American Structures v. City of Balto.,* 278 Md. 356, 364 A.2d 55 (1976). Thus, Maryland law has never recognized the defense of governmental immunity in contract actions against counties and municipalities. *Board v. Town of Riverdale,* 320 Md. 384, 389, 578 A.2d 207, 210 (1990); *Md.–Nat'l Cap. P. & P. Comm'n v. Kranz,* 308 Md. 618, 622, 521 A.2d 729, 731 (1987); *American Structures v. City of Balto., supra,* 278 Md. at 359–360, 364 A.2d at 57. This Court

---

10. Legislation enacted by the County Council pursuant to the Montgomery County Charter, the Express Powers Act, and Article XI–A of the Constitution, however, is subject to the County Executive's veto authority. *See* § 208 of the Montgomery County Charter.

has repeatedly held that, "as long as the execution of the contract [is] within the power of the governmental unit," the local government is answerable in damages for breaching that contract. *American Structures*, 278 Md. at 359–360, 364 A.2d at 57, and cases there cited. Under some circumstances, courts have ordered that local governments specifically perform their contracts. *See, e.g., Cohen v. Baltimore County*, 229 Md. 519, 523–525, 185 A.2d 185, 187–188 (1962); *Bd. of Co. Comm. v. MacPhail*, 214 Md. 192, 199–200, 133 A.2d 96, 101 (1957).

## B.

█ There is a type of contract, particularly relevant to Montgomery County's argument in this case, which is ordinarily beyond the authority of local government entities. Local governments are generally prohibited from "contracting away the exercise of zoning power," *Attman v. Mayor*, 314 Md. 675, 686, 552 A.2d 1277, 1283 (1989). "[T]he zoning authority [cannot] obligate itself by advance contract to provide zoning," *ibid.*

*Attman v. Mayor, supra*, involved a controversy between a developer and the City of Annapolis concerning a "conditional use authorization" for an office building to be constructed by the developer. Under the Annapolis City Code, a "conditional use authorization" could only be issued by the city council, composed of the mayor and aldermen. The developer was granted a conditional use by the city council and began construction of the office building. Later, the developer sought a modification of the conditional use authorization which would permit the basement of the building to be used for purposes other than the housing of mechanical equipment. The city council granted the requested modification on the condition that the developer provide certain additional parking spaces. The developer, claiming that these new parking requirements were "arbitrary, capricious, and impossible to fulfill," challenged the city council's action by filing a lawsuit in the circuit court. Shortly before a scheduled circuit court hearing, the parties reached an oral agreement. Neverthe-

less, a dispute soon arose concerning the terms of that oral agreement. It was clear that both sides had agreed to seek a continuance of the court hearing and agreed that the developer should file a new application with the city council for a conditional use. The developer contended that the city council had agreed that it would grant the new application with certain specified less onerous parking requirements. The city council, however, maintained that it simply had agreed to consider these parking requirements, but that it did not purport to bind itself to grant the application with the less onerous parking requirements. Thereafter, the city council rejected the developer's new application for a conditional use authorization. The developer filed, in the pending circuit court proceeding, a motion to enforce the oral agreement. After some further procedural skirmishes, the circuit court denied relief to the developer, and this Court affirmed.

This Court's opinion in *Attman v. Mayor*, 314 Md. at 685–686, 552 A.2d at 1283, initially pointed out that the city council's grant of a conditional use authorization was similar to new zoning or rezoning for purposes of the principle that a government ordinarily cannot obligate itself by advance contract to provide a particular zoning. The *Attman* opinion, written by Judge McAuliffe for the Court, went on to review our prior cases involving this principle, including those invalidating agreements and those upholding agreements relating to zoning. The Court reasoned that it is only where "the zoning authority ... obligate[s] itself by advance contract to provide zoning" that the principle is applicable. 314 Md. at 686, 552 A.2d at 1283. The Court explained that, if such contracts were upheld, they would "render meaningless the prescribed zoning procedures" and would violate the requirement that the zoning authority "exercise its unconstrained independent judgment in deciding matters of reclassification ... [and] in deciding requests for special exceptions, conditional uses, or variances." 314 Md. at 686–687, 552 A.2d at 1283.

We concluded in *Attman* that, if the developer's version of the oral agreement was correct, the agreement would be invalid as an attempt to bind the city council in advance to

render a particular zoning decision. On the other hand, the Court held that, if the terms of the oral agreement were as contended for by the city council, and if the agreement "did not surrender or impair the right and obligation of the city council to independently and impartially consider the application in accordance with procedures established by law," then the agreement would be valid. 314 Md. at 688–689, 552 A.2d at 1284.

In the case at bar, Montgomery County principally relies upon the *Attman* opinion. The County, citing *Attman*, argues that it has no "legal authority to amend or repeal provisions of the Zoning Ordinance or to relinquish the District Council's authority under state law and County Charter over billboard zoning matters for 10 years in the future." (County's brief in this Court at 13). The County asserts that "[t]he principles stated by this Court in *Attman* . . . apply equally to this case." *Ibid.* According to the County, the county government is powerless to "cede legislative authority . . . over zoning matters that is specifically granted by state law and County Charter." (*Id.* at 14).

Preliminarily, to the extent that the County relies upon legislative authority pursuant to the Montgomery County Charter, the reliance is misplaced. As previously discussed, the provisions of the Montgomery County Charter granting legislative authority have no application to zoning enactments of the district council.

█ The County's reliance upon the *Attman* opinion is also misplaced. The settlement agreement in this case did not obligate the district council to rezone or amend the zoning regulations. In fact, unlike either version of the oral contract involved in *Attman,* the written settlement agreement in the case at bar contemplated no action whatsoever by the district council. This was simply not a contract providing for any type of decision by the zoning authority.

## C.

Montgomery County also complains that the settlement agreement limited executive authority and discretion in the

enforcement of the County's laws. The County contends that it may not, by contract, "relinquish the County Executive's legal obligation to enforce the ... laws and ordinances of the County." (County's brief in this Court at 13). The County asserts that no county contract "can cede ... executive enforcement authority over zoning matters...." (*Id.* at 14).

Of course, under certain circumstances and in some contexts, an attempt by a government to limit future executive discretion by contract would be invalid. *See, e.g., Fraternal Order of Police v. Baltimore County, supra*, 340 Md. at 169–171, 665 A.2d at 1034–1036, and cases there cited. For example, a contract by a Governor purporting to limit the Governor's constitutional authority and discretion in the future appointment of judges would clearly be unenforceable.

█ Nevertheless, as a general matter, executive discretion in the enforcement and execution of the laws can be limited by contract. *See, e.g., Fraternal Order of Police v. Baltimore County*, 340 Md. at 168, 171, 665 A.2d at 1034–1036; *Funger v. Mayor of Somerset*, 249 Md. 311, 328, 239 A.2d 748, 757 (1968); *Greenbelt v. Bresler*, 248 Md. 210, 215–217, 236 A.2d 1, 4–5 (1967); *Cohen v. Baltimore County, supra*, 229 Md. at 523–525, 185 A.2d at 187–188; *Bd. of Co. Comm. v. MacPhail, supra*, 214 Md. at 199–200, 133 A.2d at 101. In fact many, if not most, government contracts limit to some extent executive discretion in carrying out the laws and functions of government. If future executive discretion could not lawfully be limited by contract, a great many government contracts would be unenforceable. As pointed out earlier, however, governments are generally bound by their contracts.

This Court's opinion in *Bd. of Co. Comm. v. MacPhail, supra*, 214 Md. 192, 133 A.2d 96, specifically rejected an argument by a local government that a contract, entered into by that government, was unenforceable because it limited or interfered with executive discretion. The *MacPhail* case involved a contract between the County Commissioners of Har-

ford County [11] and Larry MacPhail, the owner of a large farm in Harford County. Under the terms of the contract, the County Commissioners agreed to grade and pave a four-mile county public road which ran to and through the farm. In return, Mr. MacPhail agreed to forebear from filing a threatened lawsuit against the County, based on earlier alleged undertakings by the County Commissioners regarding the road. After entering the contract, the County Commissioners refused to perform, arguing, *inter alia,* that the contract was beyond their authority and interfered with the future exercise of discretion by the county government. The circuit court rejected this argument and issued an injunction requiring the County Commissioners to perform the contract. This Court, in an opinion by Judge Hammond, affirmed, stating (214 Md. at 199–200, 133 A.2d at 101):

> "The chancellor, noting that generally a court will not interfere with the discretion of public officials and, so, ordinarily will not tell the County Commissioners what roads to select for improvement or how improvements should be made, held that in the case before him, ' * * * the Commissioners exercised their discretion by agreeing to improve the road under consideration.' He added: 'The purpose of this proceeding, therefore, is not to interfere with the County Commissioners in the exercise of their discretion but to require them to perform and carry out any agreements which they made in the exercise of their discretion. The Court is of the opinion that an injunction will lie under such circumstances.' We concur. We think the evidence warranted the action the chancellor took since the agreement he required to be executed was sufficiently definite and certain properly to be the subject of what, in effect, was specific performance, and since the fixing of the amount

---

11. "County Commissioners, under Art. VII, § 1, of the Maryland Constitution, largely 'act as administrators or in an executive capacity'...." *Legislative Redistricting,* 331 Md. 574, 621 n. 6, 629 A.2d 646, 670 n. 6 (1993), quoting *City of Bowie v. County Comm'rs,* 258 Md. 454, 461, 267 A.2d 172, 176 (1970). *See also Boswell v. Prince George's Co.,* 273 Md. 522, 533, 330 A.2d 663, 669 (1975).

of a judgment for breach of contract would be almost impossible and a judgment would not be a duplicate or substantial equivalent of the promised performance.... The decree merely directed the County Commissioners to construct the MacPhail road, as they had agreed to do...."

■ Thus, as the *MacPhail* opinion explains, when the executive branch of the county government, in carrying out the laws and functions of government, enters into a contract, such action constitutes the exercise of executive discretion. A requirement that the government adhere to that exercise of discretion, and be held to its contract, ordinarily does not constitute an unlawful interference with future executive discretion.

### D.

Finally, Montgomery County argues that implementation of the settlement agreement would clearly be in violation of law because the local zoning regulations flatly prohibit all billboards. Relying upon *Hanna v. Bd. of Ed. of Wicomico Co.,* 200 Md. 49, 53–58, 87 A.2d 846, 848–850 (1952), Montgomery County asserts that a "public contract must comply with law or be declared null and void," (County's brief in this Court at 16).

In determining whether implementation of the settlement agreement would involve activity in violation of law, however, it is necessary to examine all of the applicable law and not simply the district council's zoning regulations. Although a particular activity might be prohibited under local zoning regulations viewed in isolation, when all of the applicable law is considered, including prevailing state or federal law, the local zoning prohibition may be invalid or superseded. *See, e.g., Harrison v. Schwartz,* 319 Md. 360, 572 A.2d 528, *cert. denied,* 498 U.S. 851, 111 S.Ct. 143, 112 L.Ed.2d 110 (1990); *People's Counsel v. Maryland Marine,* 316 Md. 491, 560 A.2d 32 (1989). *See also Kirsch v. Prince George's County,* 331 Md. 89, 626 A.2d 372, *cert. denied,* ―― U.S. ――, 114 S.Ct. 600, 126 L.Ed.2d 565 (1993); *Md.–Nat'l Cap. P. & P. Comm'n v.*

*Chadwick,* 286 Md. 1, 405 A.2d 241 (1979). Local zoning ordinances, regulations or determinations frequently are unenforceable in light of enactments by the General Assembly. *See, e.g., Mossburg v. Montgomery County, supra,* 329 Md. 494, 620 A.2d 886; *Chevy Chase View v. Rothman, supra,* 323 Md. 674, 594 A.2d 1131; *West Mont. Ass'n v. MNCP & P Com'n,* 309 Md. 183, 196, 522 A.2d 1328, 1329 (1987) ("[Montgomery] County enjoys no inherent power to zone or rezone, and may exercise that power only to the extent and in the manner directed by the Legislature"); *Crozier v. Co. Comm. Pr. George's Co.,* 202 Md. 501, 506, 97 A.2d 296, 298 (1953).

█ When all of the applicable law is considered, it is not at all clear that Revere's contractual right under the settlement agreement to maintain its 47 billboards for ten years was in violation of law. Rather, it is Montgomery County's position in this case which appears to be in violation of law. In arriving at this conclusion, we need not reach the federal and state constitutional provisions invoked by Revere. Montgomery County's argument entirely overlooks Code (1957, 1994 Repl.Vol.), Art. 25, § 122E(b), enacted by the Maryland General Assembly in 1983. This statute unequivocally mandates that "[a] county or municipality shall pay the fair market value of an outdoor advertising sign, removed or required to be removed by the county or municipality...." [12]

Neither the district council's 1986 regulations prohibiting all billboards, nor any other enactments by Montgomery County which have been called to our attention, provide for compensa-

---

**12.** Although § 122E was placed in the article of the code which primarily deals with county commissioners, it seems clear from the statutory reference to municipalities, as well as counties, that § 122E is not limited to county commissioner counties. Moreover, § 122E is contained in a two-section subtitle in Art. 25, entitled "Outdoor Advertising," and the other section in that subtitle relates exclusively to a single county which is a chartered county. The Court of Special Appeals, in *Chesapeake v. City of Baltimore,* 89 Md.App. 54, 64–67, 597 A.2d 503, 508–510 (1991), after reviewing the language and legislative history of the statute, held that "it is clear that § 122E was intended to apply to all counties as well as to all municipalities, including Baltimore City...."

tion to the owner of pre-existing lawfully erected billboards. Insofar as the record in this case discloses, Montgomery County has never offered compensation to Revere or its predecessors. Instead, prior to the April 1990 settlement agreement, Montgomery County resisted the demands by Revere's predecessors for compensation.

The district council's regulations purporting to ban billboards must be considered in conjunction with Art. 25, § 122E. As pointed out by this Court in *Hanna v. Bd. of Ed. of Wicomico Co., supra*, 200 Md. at 57, 87 A.2d at 850, a case relied upon by Montgomery County, "no [government agency] ... has the right to ignore or circumvent the mandate of the Legislature." Under § 122E, Montgomery County has no authority to ban pre-existing lawfully erected billboards without paying the fair market value of the billboards. In light of § 122E and the facts disclosed by the record in this case, the trial court erred in holding that Revere's right under the settlement agreement to maintain 47 billboards for ten years was clearly contrary to law. Considering all of the applicable law and the circumstances, the agreement allowing Revere to maintain its 47 pre-existing billboards for ten years appeared to be a reasonable, lawful compromise and resolution of the dispute.

### E.

There are two provisions of the 1990 settlement agreement which, as Montgomery County correctly argues, are in violation of law. Both provisions, therefore, are unenforceable.

██ The first of these provisions is a clause in the settlement agreement which recites that "[t]his Agreement ... shall supersede conflicting law." Of course, neither government officials nor private parties may validly contract to "supersede" applicable law. A contractual provision which is contrary to law is invalid. *See, e.g., Larimore v. American Ins. Co.*, 314 Md. 617, 552 A.2d 889 (1989); *Lee v. Wheeler*, 310 Md. 233, 528 A.2d 912 (1987); *Maryland Cl. Emp. Ass'n v. Anderson*, 281 Md. 496, 508, 380 A.2d 1032 (1977), *Hanna v.*

*Bd. of Ed. of Wicomico Co., supra,* 200 Md. at 53–54, 87 A.2d at 848 (1952).

The second of these provisions grants to the sign owner a remedy before an administrative agency known as the "Sign Review Board." Montgomery County argues that this provision is both invalid and non-severable. Consequently, according to the County, the invalidity of this provision requires the invalidation of the entire settlement agreement.

In a 1968 regulation adopted by the district council, referred to as "Ordinance No. 6–114," the district council created a "Sign Review Board" with delineated jurisdiction and powers. One limitation on the Board's authority was that it could not permit any sign which was prohibited by the zoning regulations. A section of the 1968 sign regulations adopted by the district council ("Ordinance No. 6–115"), captioned "Right of Appeal," provided for an appeal by the sign owner to the Sign Review Board when an application for a sign permit was denied by county officials but "where a variance may be permitted" under the regulations.

The 1990 settlement agreement specifically authorized Revere to apply to the Sign Review Board when Revere believed that a sign request should be granted under the terms of the settlement agreement. Montgomery County argues that, under the district council's zoning regulations, the Sign Review Board's jurisdiction is limited to the situation where a sign is permitted under a variance and that the Board has no jurisdiction to permit a prohibited billboard. Montgomery County states that "[t]he Stipulated Consent Agreement purports to confer jurisdiction on the Sign Review Board to permit or approve billboards while the Zoning Ordinance prohibits such jurisdiction," (County's brief in this Court at 20). The County asserts that the jurisdiction of an administrative agency is delineated by law and "cannot be enlarged . . . by private agreements or by litigation settlements between parties." (*Id.* at 21).

We agree with Montgomery County that the subject matter jurisdiction of an administrative agency ordinarily can-

not be enlarged by agreement. *See, e.g., Attorney Griev. Comm'n v. Hyatt,* 302 Md. 683, 690, 490 A.2d 1224, 1227 (1985). We further agree with Montgomery County that the 1990 settlement agreement improperly purports to enlarge the jurisdiction of the Sign Review Board.[13] We do not agree with Montgomery County, however, that this one provision renders invalid the entire settlement agreement.

 The provisions in the sign regulations for an appeal by the sign owner to the Sign Review Board, and the invalid clause in the settlement agreement allowing Revere to seek a remedy from the Sign Review Board, constitute an additional procedural remedy for the benefit of the sign owner. Revere in the present case did not attempt to avail itself of the invalid procedural remedy. Revere "waived" any contractual entitlement purportedly granted by the settlement agreement to appeal to the Sign Review Board. A party to a contract ordinarily may waive a contractual provision intended for its benefit. If the party does so, the other party cannot rely on the provision to escape liability under the contract. The provision is treated as severable under the circumstances. *Twining v. Nat'l Mortgage Corp.,* 268 Md. 549, 302 A.2d 604, 607 (1973). *See also, e.g., University Nat'l Bank v. Wolfe,* 279 Md. 512, 523, 369 A.2d 570, 576 (1977); *Shoreham v. Randolph Hills,* 248 Md. 267, 274–276, 235 A.2d 735, 740–741 (1967).

Consequently, the invalid provision in the settlement agreement, giving the sign owner a right to appeal to the Sign Review Board, would not excuse Montgomery County's failure to perform its obligations under the agreement.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED, AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY AND REMAND THE CASE TO THAT*

---

**13.** In fact, under the Regional District Act, Code (1957, 1993 Repl.Vol.), Art. 28, § 8–110(a), it appears that the jurisdiction of the Sign Review Board must be limited to the matter of special exceptions and variances.

*COURT FOR FURTHER PROCEEDINGS NOT INCON-
SISTENT WITH THIS OPINION. COSTS IN THIS
COURT AND IN THE COURT OF SPECIAL APPEALS TO
BE PAID BY MONTGOMERY COUNTY.*