J-A32025-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| E.B. ENDRES, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPH & RITA SCHWEMMLEIN, | : | |
| | : | |
| Appellant | : | No. 665 MDA 2017 |

Appeal from the Judgment Entered April 4, 2017
In the Court of Common Pleas of Huntingdon County
Civil Division at No.:  2010-0032

BEFORE: OTT, J., DUBOW, J., and STRASSBURGER, J.*

MEMORANDUM BY DUBOW, J.:                **FILED JANUARY 04, 2018**

In this breach of contract and unjust enrichment action, Appellants, Christoph and Rita Schwemmlein, appeal from the Order entering Judgment in favor of Appellee, E.B. Endres, Inc. ("Endres"), following a bench trial. After careful review, we affirm on the basis of the trial court's well-reasoned and comprehensive Opinion.

We adopt the extensive findings of fact as set forth in the trial court's September 23, 2016 Opinion.  **See** Trial Court Opinion, dated 9/23/16, at 2-19.  In summary, Appellants hired Endres, a high-end remodeling company, to make substantial renovations to their house in Alexandria, Pennsylvania. In July 2007, Appellants, along with their friend Klaus Jaeger, met with Richard J. Endres, Jr., the sole stockholder and CEO of Endres, at their Alexandria house and explained the desired renovations and general expectations during a walkthrough of the entire house.  Because Appellants

_____
* Retired Senior Judge assigned to the Superior Court.

resided in Germany at that time, they explained that Endres should work out the details with Jaeger as their agent during the renovations.

After the meeting, Endres submitted a proposed contract and estimate for $167,000.00, but Appellants did not sign this written contract. Based on this understanding, and assurances from Jaeger, Endres started the renovations in August 2007. The scope of the work changed dramatically during the renovations with 81 total change orders, which Endres documented after obtaining verbal authorization and provided Jaeger with a copy of each change order. Appellants made several payments during the project.

In December 2007, Jaeger requested that Endres submit an invoice in the amount of $230,000.00 before the end of the year for Appellants' tax purposes. Though he could only justify $210,000.00 at that point, Endres complied even though work was still in progress. Endres made changes at Appellants' request, and submitted a second invoice, also in the amount of $230,000.00. In letters accompanying the invoices, Endres clarified that these were not final bills. On January 3, 2008, Appellants paid Endres $80,000.00, bringing their total paid for the renovations to $230,000.00, the same amount of Endres' December invoice.

Jaeger and his wife moved into the Alexandria house in January 2008, but the renovations continued until March 2008. On June 17, 2008, Endres presented a final bill for $85,245.61. After negotiations with Appellants over

double-billed work, Endres lowered the final bill to $83,596.57 in September 2008. Appellants refused to pay the final bill.

On January 15, 2010, Endres filed a Complaint against Appellants for breach of contract and unjust enrichment in order to collect the amount on the final bill. Following a two-day bench trial in January 2016, on September 23, 2016, the trial court entered a verdict in favor of Endres and against Appellants and filed an Opinion with 91 findings of fact.

On October 3, 2016, Endres and Appellants filed Post-Trial Motions. On October 25, 2016, the trial court entered an Order dismissing Appellant Rita Schwemmlein as a defendant. On March 20, 2017, the trial court entered an Opinion and Order addressing and rejecting each of Appellant Christoph Schwemmlein's issues; the trial court granted Endres' Motion with respect to a request for costs and pre-judgment interest.

On April 4, 2017, the trial court entered Judgment in favor of Endres for a total of $137,268.21, which included $83,596.57 for breach of contract, $53,582.64 for pre-judgment interest, and $89.00 for court costs.

Appellants filed a Notice of Appeal on April 19, 2017. Appellants and the trial court complied with Pa.R.A.P. 1925.

Appellants present four issues for our review:

> [1.] Did the trial court err in failing to analyze the elements required to establish an oral contract in holding [Endres] satisfied its burden of proof to establish an oral contract was entered into by the parties for the work at issue to be performed on a time and materials basis?

[2.] Did the trial court err in not finding an express contract existed between the parties establishing a total amount of $230,000.00 for the entire project?

[3.] Did the trial court err in its finding that [Endres] was not limited to actual costs incurred by [Endres] as set forth in Note 7 of the express written contract?

[4.] Did the trial court abuse its discretion in awarding [pre-judgment] interest where none of the bases for an award of pre[-]judgment interest for a breach of contract claim exist?

Appellants' Brief at 5.

In their first three issues on appeal, Appellants essentially challenge the trial court's findings of fact and conclusions of law. Appellant's Brief at 18-43. The relevant standard of review following a non-jury trial is as follows:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of law. The findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as the verdict of a jury, and the findings will not be disturbed on appeal unless predicated upon errors of law or unsupported by competent evidence in the record. Furthermore, our standard of review demands that we consider the evidence in a light most favorable to the verdict winner.

*Levitt v. Patrick*, 976 A.2d 581, 588-89 (Pa. Super. 2009).

The Honorable Stewart L. Kurtz has authored a comprehensive, thorough, and well-reasoned Opinion, with references to relevant facts of record and applicable case law. *See* Trial Court Opinion, dated 3/20/17, at 5-11 (clarifying its findings and conclusions, and rejecting Appellants' claims that essentially ignore the standard of review by attempting to re-litigate

- 4 -

trial issues like credibility determinations).  The record is free of legal error and the evidence supports the court's challenged rulings.  After a careful review of the parties' arguments and the record, we discern no abuse of discretion or error of law and we affirm on the basis of that Opinion.

In their fourth issue on appeal, Appellants challenge the trial court's award of pre-judgment interest.  Appellants' Brief at 43-45.  "Our review of an award of pre-judgment interest is for abuse of discretion."  ***Cresci Construction Services, Inc. v. Martin***, 64 A.3d 254, 258 (Pa. Super. 2013) (citation and quotation omitted).

Pursuant to Pennsylvania law, pre-judgment interest is a recognized form of damages in breach of contract actions.  ***See id.*** at 260.  The premise for awarding pre-judgment interest in breach of contract actions, is "the fact that the breaching party has deprived the injured party of using interest accrued on money which was rightfully due and owing to the injured party."  ***Somerset Community Hospital v. Allan B. Mitchell & Associates, Inc.***, 685 A.2d 141, 148 (Pa. Super. 1996) (citation omitted).

Where the contract at issue sets forth a liquidated sum, pre-judgment interest is awarded as a matter of right.  ***See id.***  Where, however, the breach of contract damages are unliquidated, an award of pre-judgment interest is left to the discretion of the trial court, in light of all the circumstances.  ***See Cresci*** at 264; ***Frank B. Bozzo, Inc. v. Electric Weld***

***Division of Fort Pitt Division of Spang Industries, Inc.***, 498 A.2d 895, 901 (Pa. Super. 1985).

The trial court cogently and persuasively addressed this issue in its March 20, 2017 Opinion. ***See*** Trial Court Opinion, dated 3/20/17, at 12-14 (concluding that Endres was entitled to pre-judgment interest because the amount Appellants owed Endres was "readily ascertainable" at the time of the breach because the judgment amount was the same as the adjusted final bill Endres presented to Appellants in September 2008). The record is free of legal error and the evidence supports the court's award of pre-judgment interest. We affirm on the basis of that Opinion.

The parties are directed to attach a copy of the trial court's September 23, 2016 and March 20, 2017 Opinions to all future filings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/4/2018

- 6 -

IN THE COURT OF COMMON PLEAS OF HUNTINGDON COUNTY, PENNSYLVANIA

CIVIL DIVISION

E. B. ENDRES, INC.,
            Plaintiff

      vs.            : NO. 2010-32

CHRISTOPH and RITA SCHWEMMLEIN,
            Defendants

## O R D E R

AND NOW, this 23rd day of September, A.D., 2016, judgment is entered in favor of the Plaintiff and against the Defendants in the amount of Eighty-Three Thousand Five Hundred Ninety-Six and 57/100 ($83,596.57) Dollars.

BY THE COURT,

_____
S.J.

NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO PA. R. C. P. NO. 236
NOTIFICATION - THIS DOCUMENT HAS
BEEN FILED IN THIS CASE.
PROTHONOTARY, HUNTINGDON COUNTY, PA
DATE:

**SEP 2 3 2016**

000672a

IN THE COURT OF COMMON PLEAS OF HUNTINGDON COUNTY, PENNSYLVANIA

CIVIL DIVISION

E. B. ENDRES, INC.,
               Plaintiff     :

vs.                 : NO. 2010-32

CHRISTOPH and RITA SCHWEMMLEIN, :
               Defendants   :

MEMORANDUM

This case was tried to the Court January 25, 26, 2016. After the preparation of a transcript of testimony, counsel filed Proposed Findings of Fact and Conclusions of Law. Argument was held July 28, 2016. After a careful consideration of the record and the arguments of counsel, we make the following:

1

## Findings of Fact

1. E. B. Endres, Inc., is a Pennsylvania corporation with its principal place of business located at 10630 Fairgrounds Road, Huntingdon, Pennsylvania.

2. Richard J. Endres, Jr., is the sole stockholder and CEO of the corporation.

3. Mr. Endres testified that the business began in 1928 and that today it is doing Eight Million and No/100 ($8,000,000.00) Dollars of business a year.

4. The business does commercial and residential remodeling with the commercial customers contributing eighty (80%) per cent of the corporate revenue.

5. Mr. Endres reported that his company specializes in food service cabinetry which accounts for the fact that Sheetz is a major customer.

2

000674a

6. Mr. Endres testified that the company does high-end residential remodeling.

7. Defendants are married, are German citizens and reside, according to the Complaint, at Eichengrund 6, D-46325 Borken-Weseke, Germany.

8. Defendants at all times relevant to this litigation were the owners of real estate located at 7889 River Hill Lane, Alexandria, Porter Township, Huntingdon County, Pennsylvania.

9. A one story ranch home is situated on the property.

10. In May, 2007, Mr. Klaus Jaeger, a faculty member at Juniata College, Huntingdon, Pennsylvania, called Mr. Endres concerning remodeling at Defendants' Huntingdon County residence.

11. Mr. Jaeger and Mr. Endres had known each other a long time and Mr. Jaeger had employed Plaintiff to remodel his Huntingdon home.

3

000675a

12. Mr. Jaeger and Mr. Schwemmlein had known each other since Mr. Schwemmlein had been an exchange student at Juniata College.

13. Mr. Endres and Mr. Jaeger met at the property in early May.

14. By letter dated May 14, 2007, (Pl. Ex.1) Mr. Endres summarized for Mr. Schwemmlein the substance of that meeting.

15. Mr. Endres requested in his letter Mr. Schwemmlein's budget for the project as well as a Two Thousand Five Hundred and No/100 ($2,500.00) Dollar retainer.

16. Mr. Schwemmlein did not respond to this letter.

17. Defendants came to Huntingdon in July, 2007, and along with Mr. Jaeger met with Mr. Endres at the property.

18. Mr. Endres testified that they walked through the house, looked at every area, and made a list of the items Mr. Schwemmlein wanted renovated.

4

000676a

19. Mr. Endres' recollection of this face to face meeting was that Mr. Schwemmlein was in a hurry, and was content to tour the house room by room giving the contractor his general expectations for remodeling.

20. As for detail, Mr. Endres testified that Defendant made it clear that Mr. Jaeger was to be his agent on the job and details were to be worked out with him.

21. Mr. Schwemmlein, in his testimony, confirmed that Klaus Jaeger was his agent for the job since he lived in Europe and traveled a lot.

22. Mr. Schwemmlein recalled at trial that Mr. Endres during this July meeting promised him that he would add only ten (10%) per cent to the cost of materials.

23. He also recalled subsequent meetings with Ms. Anita Soliday who designs kitchens for Plaintiff.

5

000677a

24. Ms. Soliday has a B.S. from Penn State University in architecture, and she testified at trial concerning her work on this project.

25. By letter dated August 8, 2007, Plaintiff sent Defendants a "budget estimate" for the improvements to their Alexandria residence.

26. The budget estimate set forth a cost of One Hundred Seventy Thousand and No/100 ($170,000.00) Dollars for the work.

27. On August 16, 2007, Plaintiff mailed to Defendants a contract for the project. (Plaintiff's Exhibit 3.)

28. The eight (8) page contract stated One Hundred Sixty-Seven Thousand and No/100 ($167,000.00) Dollars as the price for the work, and set forth in detail the scope of the work.

29. Mr. Schwemmlein testified that he negotiated the price down from One Hundred Seventy Thousand and No/100 ($170,000.00) Dollars.

6

000678a

30. Mr. Endres denied that there was any negotiation with respect to the cost, and speculated that the difference in price from the estimate was the result of error made in preparing the budget estimate.

31. The written contract made no mention of a ten (10%) per cent cap on the mark up of the cost of materials.

32. In the written contract, changes in the scope of the work were addressed in the "Notes".

33. Note 7 provided that both parties had to agree in writing to the change, and that the cost of the change would, if possible, be determined in advance.

34. In Note 6, the contract provided the cost of changes would be the actual costs (time and materials).

35. Defendants never signed the written contract.

7

000679a

36. Nonetheless, Mr. Schwemmlein testified at trial that there was a contract to do the scope of the work set forth in the written contract at a cost of One Hundred Sixty-Seven Thousand and No/100 ($167,000.00) Dollars.

37. "We shook hands and that was good enough for me" was his testimony.

38. Mr. Endres testified that he went forward with the project because of the assurances he received from Mr. Jaeger.

39. There is no dispute that the scope of the work done on Defendants' residence changed dramatically as soon as work commenced in August, 2007.

40. During the course of the project there were eighty-one (81) changes to the scope of the project.

41. Mr. Endres testified that he documented each change with a change order that he provided to Mr. Jaeger.

8

000680a

42. In this regard, he said he provided Mr. Jaeger with a three (3) ring binder to keep the change orders as they were generated.

43. Mr. Jaeger agreed that change orders were provided to him either by Mr. Endres or Jobe Glenny who was the on-site manager for Plaintiff on the project.

44. Mr. Endres testified that changes were not done without verbal authorization.

45. Each change order had two (2) dates.

46. The date on the top of each order was the date the work was requested.

47. The date next to Mr. Endres' electronic signature was the date when the cost of the change was determined.

9

000681a

48. None of the change orders were signed by Defendants; however, Mr. Endres testified the work represented by each change order was authorized by Mr. Jaeger.

49. The work represented by many of the change orders was done before the actual cost was determined; nonetheless no evidence suggested that the changes were not authorized.

50. The total cost of the changes made to the scope of the project was One Hundred Forty-Eight Thousand Two Hundred Forty-Five and 61/100 ($148,245.61) Dollars

51. Major items of change and the cost charged included inter alia:

| | | |
|---|---|---|
| 51.1. | A New Roof | $ 7,202.00 |
| 51.2. | Geothermal HVAC System | 37,038.83 |
| 51.3. | Insulation | 17,417.13 |
| 51.4. | New Soffit & Fascia | 6,610.21 |
| 51.5. | Painting | 7,652.00 |
| 51.6. | Harwood Floor | 5,878.95 |
| 51.7. | Sliding Door | 5,868.08 |
| | TOTAL | $87,667.72 |

10

000682a

52. Mr. Endres testified that with respect to the big ticket items, Defendants knew the cost in advance of the work since bids were obtained from sub-contractors prior to the work being done.

53. Many of the change orders were billed at the completion of the project.

54. It was not disputed by Plaintiff that on many of the change orders the cost of materials was marked up forty (40%) per cent.

55. Mr. Schwemmlein testified at trial that the work represented by the eighty-one (81) change orders was in fact done, and that he was ninety-nine (99%) per cent satisfied with the work.

56. No testimony at trial suggested that any of the changes were un-necessary, inappropriate, not authorized by Defendants acting through Mr. Jaeger or were a part of the scope of work encompassed in the One Hundred

11

000683a

Sixty-Seven and No/100 ($167,000.00) Dollar lump sum portion of the initial contract.

57. In December, 2007/January, 2008, the parties engaged in conduct which today is the principal reason for this litigation.

58. While there is some agreement factually as to what happened, there are substantial differences in the recollection of the parties.

59. Mr. Endres testified that on December 17, 2007, Mr. Jaeger came to him with a request from Mr. Schwemmlein for a billing to be presented before the end of the year.

60. Mr. Jaeger, he said, instructed him that the bill generated was to be in the amount of Two Hundred Thirty Thousand and No/100 ($230,000.00) Dollars, even though at this point Mr. Endres was only able to justify Two Hundred Ten Thousand and No/100 ($210,000.00) Dollars.

61. He was told, he said, that the bill was strictly for income tax purposes.

12

62. Mr. Endres testified he told Mr. Jaeger he was not prepared to do a billing since work was still in progress and since he did not have all of the bills from subcontractors or for materials acquired to do change orders.

63. Since Mr. Jaeger insisted, Mr. Endres said he prepared a bogus statement for the work on Defendants' residence and sent it to Defendants on December 17, 2007.

64. According to Mr. Endres, the first invoice was not satisfactory to Defendants as a result of which he was asked to do a second statement with the numbers adjusted.

65. The total for the work however remained the same -- Two Hundred Thirty Thousand and No/100 ($230,000.00) Dollars.

66. Again, Mr. Endres testified he was told the adjustment of the numbers would enable the defendants to realize a better tax savings.

13

000685a

67. Also, Mr. Endres testified he was asked to have the revised bill notarized.

68. Mr. Endres complied with the requests, however, in his letters to Defendants dated December 17 and December 19, 2007, he made it clear that the billing statements were not final bills. (See Plaintiff's Exhibit 6.)

69. At trial, Mr. Schwemmlein placed in evidence as his Exhibit 8 the first of the two (2) billing statements Mr. Endres testified he prepared at Defendants' request.

70. Mr. Schwemmlein testified concerning the exhibit as follows:

"BY MR. SCHOONOVER:

Q. Regarding Defendant's No. 8, Mr. Schwemmlein, how did that document come about?

A. I transferred quite a lot of dollars to the United States to make partial payments and to buy the property and **I stopped into Mr. Endres' office and said to him I need an invoice for tax purposes** and Mr. Endres said by – well, by early January it will add about $210,000 which we spent so far and I said I see that that's a 90 to 95 percent of the job is done. I would like to have it settled

14

000686a

and we agreed — after some negotiation we agreed on a sum of 230,000 although at that time $20,000 worth of work was not done for me right now.

Q. Now Mr. Endres testified that Mr. Jaeger provided the $230,000 number to him and told him to use that number. Do you agree with that?

A. No.

Q. Where did that $230,000 number come from?

A. Negotiation.

Q. And that was between you and Mr. Endres directly?

A. Yes."

(N.T., at pp. 210, 211.)

71. Thus, the parties agree that in December, 2007, Mr. Schwemmlein wanted of some type of statement for tax purposes.

72. However, Mr. Endres was unequivocal that while he provided the statement requested by Defendants he never negotiated or agreed to limiting the cost of the project to Two Hundred Thirty Thousand and No/100 ($230,000.00) Dollars.

15

000687a

73. Prior to January 3, 2008, Defendants had paid to Plaintiff One Hundred Fifty Thousand and No/100 ($150,000.00) Dollars.

74. On January 3, 2008, Defendants paid Plaintiff Eighty Thousand and No/100 ($80,000.00) Dollars bringing the total paid on account of the project to Two Hundred Thirty Thousand and No/100 ($230,000.00) Dollars.

75. Work continued in January, 2008, however, Mr. Jaeger and his wife moved into the home on January 9, 2008.

76. Work ended in March, 2008, and Plaintiff presented Mr. Jaeger a final bill for the project on June 17, 2008.

77. The amount of the final bill was Eighty-Five Thousand Two Hundred Forty-Five and 61/100 ($85,245.61) Dollars.

78. Mr. Jaeger testified at trial that Defendants were "stunned" by the bill.

16

000688a

79. Mr. Schwemmlein testified that he was not expecting an invoice since in his view Plaintiff had been fully paid.

80. Two (2) meetings were held on successive days in July to attempt to resolve the billing dispute.

81. At the second meeting, Mr. Schwemmlein said he brought his checkbook and was willing to settle the matter.

82. The offer was refused.

83. Mr. Schwemmlein also testified that he told Mr. Endres that he had concerns that he had been double charged.

84. By that, he explained, there were items in the change orders that he believed were part of the Two Hundred Thirty Thousand and No/100 ($230,000.00) Dollar agreement.

17

000689a

85. Also, Mr. Schwemmlein said he was concerned that he was being charged more for materials than the ten (10%) per cent markup that had been agreed upon.

86. Ms. Soliday testified that she attempted to address the billing concerns of Defendants.

87. She prepared, she said, a listing of the change orders in chronological order.

88. Plaintiff's Exhibit 7 is the listing and it allowed Defendants, she said, to see exactly how the project evolved from beginning to end.

89. In the preparation of this exhibit, Mr. Soliday determined that Defendants were entitled to three (3) credits totaling One Thousand Six Hundred Forty-Nine and 04/100 ($1,649.04) Dollars.

90. The final bill was therefore reduced to Eighty-Three Thousand Five Hundred Ninety-Six and 57/100 ($83,596. 57) Dollars.

18

000690a

91. The parties were not able to resolve their differences and this action was subsequently filed.

## Discussion

In its Complaint, Plaintiff stated claims for a breach of an oral contract and for unjust enrichment.

## Breach of Contract

In this case it is not disputed that on August 16, 2007, Plaintiff by its CEO and President tendered to Defendants a written offer for renovations to their Huntingdon County home. There is also no dispute that Defendants never accepted the written offer by executing the proposal. Nonetheless, Mr. Schwemmlein was unequivocal in his testimony that he and his wife accepted the terms of the offer. (N.T., at p. 207.)

19

000691a

The Superior Court of Pennsylvania has opined that ". . . in order for an enforceable agreement to exist, there must be a 'meeting of the minds', whereby both parties mutually agree to the same thing, as evidenced by an offer and its acceptance. (Citation omitted.) It is equally well established that 'an offer may be accepted by conduct and what the parties do pursuant to the offer is germane to show whether the offer is accepted'. Accuweather, Inc. v. Thomas Broadcasting, Co., 425 Pa.Super. 335, 625 A.2d 75, 78 (1993)." Refuse Mgmt. Sys. V. Consolidated Recycling & Transfer Sys., 448 Pa.Super. 402, 671 A.2d 1140, 1146 (1995).

We have no hesitation therefore in concluding that there was a contract between the parties that provided that in consideration of One Hundred Sixty-Seven Thousand and No/100 ($167,000.00) Dollars Plaintiff would do the renovations set forth in the written scope of work attached to the August 16, 2007, written offer. In short, we believe the written offer was accepted.

We are also not reluctant to conclude that during construction the parties developed a protocol for change orders that altered the provisions set forth in Note 7 of the written contract. The procedure followed during construction was

20

000692a

a direct result of the fact that Defendants were at all times in Europe and not available to sign documents. Also, the procedure followed was a recognition that it was not always possible to determine in advance the cost of a change. In his testimony Mr. Schwemmlein acknowledged the need for the changes, the verity that he and Mr. Jaeger conferred regularly regarding changes and finally that he was "only interested in getting the job done . . .". (N.T., at p. 252.)

There remains the argument of Defendants that in December, 2007, the parties agreed that the final cost of the project with all of the changes would be Two Hundred Thirty Thousand and No/100 ($230,000.00) Dollars. We reject this argument for the following reasons:

First, in our view, it is nonsensical to argue that Mr. Endres, a successful businessman would agree to a lump sum price for an unfinished project when he knew in December, 2007, that the cost of just a few of the big ticket change orders when added to the original contract price of One Hundred Sixty-Seven Thousand and No/100 ($167,000.00) Dollars far exceeded Two Hundred Thirty Thousand and No/100 ($230,000.00) Dollars. Nothing in this record suggests

21

000693a

any possible reason for the Plaintiff to agree to complete this job and incur a substantial loss.

Next, certain facts regarding the preparation of the documents Defendants claim created a new contract are not in dispute. First, they were prepared at the insistence of Defendants on the pretext of assisting Defendants with their income taxes. Second, Mr. Schwemmlein testified and his testimony was corroborated by the documents that he requested Mr. Endres to change the numbers that Mr. Endres initially prepared in response to the request for an invoice. Again, German tax laws were assigned as the reason for these changes. Finally, Mr. Schwemmlein testified that for tax reasons he requested that the documents be notarized, and Mr. Endres complied. The testimony and the documents persuade us that they were not prepared as an expression by the parties of a new contractual understanding but rather were created as some type of tax legerdemain to gain Defendants an advantage with their tax obligations.

Finally, we found Mr. Endres' testimony and his Exhibit 6 were far more credible regarding the creation of Defendants' Exhibit 8. In this regard we found

22

000694a

Mr. Schwemmlein's testimony that ". . . he stopped into Mr. Endres' office . . ." and negotiated a new contract incredible. No other testimony in the case corroborated Mr. Schwemmlein's presence in Huntingdon in December, 2007, and the documents and letters in our view refute that fact.

For these reasons, we reject the argument that the parties entered into a new agreement in December, 2007.

## Conclusion

For the reasons set forth in this Memorandum, we will enter judgment in favor of the Plaintiff and against Defendants in the amount of Eighty-Three Thousand Five Hundred Ninety-Six and 57/100 ($83,596.57) Dollars.

BY THE COURT,

_____
S.J.

DATED: September 23, 2016

23

000695a

IN THE COURT OF COMMON PLEAS OF HUNTINGDON COUNTY,
PENNSYLVANIA

CIVIL DIVISION

E. B. ENDRES, INC.,                    :
                    Plaintiff          :
                                       :
                                       :
            vs.                        : NO. 2010-32
                                       :
CHRISTOPH and RITA SCHWEMMLEIN, :
                    Defendants         :

The Original of the Document has been filed in the Office of the Prothonotary/Clerk of Court on MAR 2 0 2017

ORDER

AND NOW, this 20th day of March, A.D., 2017, the verdict of this Court entered in the above captioned case on October 25, 2016, is amended as follows:

1. Rita Schwemmlein is dismissed as a Defendant.

2. Plaintiff is awarded Eighty-Three Thousand Five Hundred Ninety-Six and 57/100 ($83,596.57) Dollars plus costs and properly calculated interest.

NOTICE OF ENTRY OF ORDER OR DECREE PURSUANT TO PA. R. C. P. NO. 236 NOTIFICATION - THIS DOCUMENT HAS BEEN FILED IN THIS CASE. PROTHONOTARY, HUNTINGDON COUNTY PA DATE: MAR 2 0 2017

1

000729a

Plaintiff shall submit to the Court a form of judgment.


BY THE COURT,


_____
S.J.

000730a

IN THE COURT OF COMMON PLEAS OF HUNTINGDON COUNTY,
PENNSYLVANIA

CIVIL DIVISION

E. B. ENDRES, INC.,              :
          Plaintiff      :
                             :
       vs.           : NO. 2010-32
                             :
CHRISTOPH and RITA SCHWEMMLEIN, :
          Defendants   :

MEMORANDUM

This case came on for argument February 13, 2017, on Motions filed by

the parties for Post-Trial Relief from the verdict entered in this case in favor of

the Plaintiff.[1]

**Background**

Plaintiff filed this action January 15, 2010, to recover damages for

breach of contract and/or unjust enrichment. The factual basis for these

---

[1] Pa.R.C.P. 227.1.

1

000731a

claims was work performed by Plaintiff on a home owned by Defendant Christoph Schwemmlein located in Porter Township, Huntingdon County, Pennsylvania. The cost of the work performed according to Plaintiff was Three Hundred Thirteen Thousand Five Hundred Ninety-Six and 57/100 ($313,596.57) Dollars of which amount Two Hundred Thirty Thousand and No/100 ($230,000.00) Dollars was paid by Defendants.

Following a two (2) day trial, this Court filed a Memorandum on September 23, 2016, in which we made ninety-one (91) Findings of Fact regarding the contractual relationship among the parties. Based on those findings, we concluded that Plaintiff had met its burden of proof and was entitled to a verdict in the amount of Eighty-Three Thousand Five Hundred Ninety-Six and 57/100 ($83,596.57) Dollars. The motions sub judice were filed in due season.

## Defendants' Amended Motion for Post-Trial Relief

Defendants have proffered eleven (11) claims of error in support of their request that the verdict entered October 25, 2016, be set aside and

2

vacated, and that an order be entered in their favor and against the Plaintiff. We will address these claims seriatim.

First, Defendants complain that Finding of Fact 8 to the effect that their Porter Township real estate was jointly owned was error. They correctly point out that Paragraph 4 of Plaintiff's Complaint alleged that Defendant Christoph Schwemmlein was the deeded owner of the real estate, a fact admitted in the Answer of the Defendants.

Next, Defendants object to Finding of Fact 21 that "Mr. Schwemmlein, in his testimony, confirmed that Klaus Jaeger was his agent for the job since he lived in Europe and traveled a lot" since both Mr. Schwemmlein and Mr. Jaeger testified that Dr. Jaeger was just the "go between" for Schwemmlein who made all decisions on the project.

Based on the testimony we heard, we think the undisputed testimony from Mr. Endres, Mr. Jaeger and Mr. Schwemmlein clearly established that Mr. Jaeger was Mr. Schwemmlein's agent. An agency relationship results from "(1) the manifestation of consent of one person to another that (2) the

3

000733a

other shall act on his behalf and subject to his control, (3) consent by the other so to act". Reid v. Ruffin, 503 Pa. 458, 462-63, 469 A.2d 1030, 1033 (1983), citing Smalich v. Westfall, 440 Pa. 409, 413-14, 269 A.2d 476, 480 (1970). The evidence in this case established these elements and therefore an agency relationship.

In their third claim of error Defendants challenge Findings of Fact 59 and 60. Their challenge indicates a misunderstanding of the facts stated by the Court. What we said in those paragraphs is that **Mr. Endres testified** to certain facts regarding the creation of the Two Hundred Thirty Thousand and No/100 ($230,000.00) Dollar invoice. As reference to the record will show, the recitation of Mr. Endres's testimony was accurate. (N.T., at p. 75.) The findings proffered no conclusions regarding this testimony. Accordingly, the exception to them is meritless.

Next, Defendants object to a statement on page 19 of the Memorandum that "Mr. Schwemmlein was unequivocal in his testimony that **he and his wife** accepted the terms of the offer. (N.T., at p. 207)." They

4

000734a

correctly point out that only Mr. Schwemmlein accepted the terms of the offer.

In the next two (2) assignments of error, Defendants make conflicting claims regarding the Court's conclusion with respect to the contract in this case. Thus, in Paragraph 18 of their motion, the claim is that it was error to fail ". . . to make a finding that the plaintiff satisfied its burden of proof to establish an oral contract was entered into by the parties for the work at issue to be performed on a time and materials basis . . .". In Paragraph 19, the claim is that the Court erred" . . . in apparently finding that a meeting of the minds and oral contract existed between the parties concerning how the additional work would be billed".

Perhaps the best way to address these claims is to restate our conclusions.

Our conclusion in this case which we attempted to express in our adjudication was that all the evidence established that Plaintiff and Christoph Schwemmlein entered into an oral contract for renovation of a home owned

5

000735a

by Mr. Schwemmlein in Huntingdon County. The terms of their agreement were memorialized in a letter from Plaintiff to Defendants dated August 16, 2007, which letter was received in evidence as Plaintiff's Exhibit 3.

A succinct summary of the agreement is that in consideration of One Hundred Sixty-Seven Thousand and No/100 ($167,000.00) Dollars, Plaintiff would do the renovations outlined in the August 16 letter. In addition, the letter in footnote 7 provided for the inevitable change orders which seemingly occur in every construction project.

In our adjudication, we set forth that due to the fact that during the construction phase of this project Mr. Schwemmlein was in Europe the parties developed a protocol for change orders different to that set forth in footnote 7. Mr. Endres testified that each of the eighty-one (81) changes to the scope of the project was brought to the attention of Mr. Jaeger. (N.T., at pp. 70, 71.) Mr. Jaeger confirmed that he received the change order from Mr. Endres and that he would then "relay that to Christoph by way of telephone call . . . and then usually got the go ahead, yes, continue with the project". (N.T., at pp. 258, 259.) Mr. Schwemmlein testified concerning the changes that he wanted

6

000736a

Mr. Jaeger "to check it and to inform me so I can make up my mind and make a decision". (N.T., at p. 208.) Also, regarding the changes, we note that Mr. Schwemmlein testified that ninety-nine (99%) percent of the work on his home was necessary and done to his full satisfaction. (N.T., at p. 240.) Finally, no testimony indicated that Defendants during construction objected to the cost of any change. It wasn't until the job was completed, and a final bill generated that objection was made, and even then, the objection was not to the fact of or cost of the changes but rather the claim of Mr. Schwemmlein that a second lump sum agreement had been struck.

In this case, the conduct of the parties established an oral contract based on the written offer proffered by Plaintiff to Defendants August 16, 2007. (Plaintiff's Exhibit 3.) Further, their method and manner of dealing with changes to the work proved that this work was to be paid for on a time and materials basis. Accordingly, the exceptions stated in Paragraphs 18 and 19 are without merit.

In Paragraph 20 of the motion sub judice, Defendant Rita Schwemmlein excepts to the conclusion that she was contractually obligated to Plaintiff.

7

000737a

The exception has merit since the record indicates that the only involvement of Mrs. Schwemmlein in this case was at the July, 2007, meeting at the property. (See Findings of Fact 17, 18, 19.) Pennsylvania law is in accord with Restatement, Agency 2d, 22(b), which provides that "Neither husband nor wife by virtue of the relation has power to act as agent for the other. The relation is of such a nature, however, that circumstances which in the case of strangers would not indicate the creation of authority or apparent authority may indicate it in the case of husband and wife. Thus, a husband habitually permitted by his wife to attend to some of her business matters may be found to have authority to transact all her business affairs". Tonuci v. Beegal, 188 Pa.Super. 66, 70, 145 A.2d 885, 888 (Pa.Super. 1958). No evidence in this case suggested Mr. Schwemmlein had the authority or apparent authority to bind his wife into a contractual relationship with Plaintiff. We will therefore set aside the verdict entered against Mrs. Schwemmlein.

The next exception relates to Defendants' defense at trial which was that the parties entered into a second oral contract in December, 2007, for completion of the project for a lump sum of Two Hundred Thirty Thousand and No/100 ($230,000.00) Dollars. The defense was pleaded in Paragraphs

8

000738a

61-65 of Defendants' New Matter, and was the subject matter of Findings of Fact 57-75. The defense was rejected, a conclusion Defendants argue was against the weight of the evidence.

The Superior Court of Pennsylvania has set the standard for evaluating claims of this ilk. In Sheely v. Beard, 696 A.2d 214, 219 (1996), the court explained that "It is well settled that 'a new trial will not be granted on the basis of a weight of the evidence claim unless evidence supporting the verdict is so inherently improbable or at variance with admitted or proven facts or with ordinary experience as to render the verdict shocking to the court's sense of justice'. Brindly v. Woodland Village Restaurant, 438 Pa.Super. 385, 652 A.2d 865, 872 (1995). Moreover, '[a] new trial should not be granted upon a mere conflict of testimony'. Factor v. Bicycle Technology, Inc., 452 Pa.Super. 26, 680 A.2d 1178, 1180 (1996), appeal granted, 517 Pa. 459, 691 A.2d 459 (1997)".

In this case, the unequivocal testimony of Mr. Endres that he did not agree to complete the project for a lump sum of Two Hundred Thirty Thousand and No/100 ($230,000.00) Dollars, the corroborating evidence of

9

000739a

the letters he sent to Mr. Schwemmlein on December 17 and 19 (Plaintiff's Exhibit 6), and our own common sense that rejected the notion that a successful businessman would out of the blue and for no apparent reason enter into a contract that he knew would cause him to lose money easily persuaded this fact finder to reject the claim of Defendants. Indeed, the claim in our view introduced into this case an element of legerdemain that impacted the credibility decisions that we were called upon to make.

In Paragraph 22 of their Amended Motion, Defendants find error in the failure of the Court to conclude that Plaintiff was only entitled to its actual costs for the time and materials for work performed as extra work. They point to Note 6 of the August 16, 2007, written offer (Plaintiff's Exhibit 3) which provides as follows:

> "6) No installation, plumbing, electrical, flooring, decorating or other construction work is to be provided unless specifically set forth herein. **It is understood that the price agreed upon herein does not include possible expense entailed in coping with hidden or unknown contingencies found at the job site.** In the event such contingencies arise and the seller is required to furnish labor or materials or otherwise perform work not provided for or contemplated by the seller, the actual costs (time and materials) will be paid for by the purchaser. Contingencies

10

include, but are not limited to: inability to reuse existing water, vent and waste pipes, air shafts, ducts, grilles, louvers and registers; the relocation of concealed pipes, risers, wiring or conduits, the presence of which cannot be determined until the work has started; or imperfections, rotting or decay in the structure of parts thereof necessitating replacement."

The answer to the exception is that we read Note 6 as applicable only to contingencies as that term was defined in the note. No evidence at trial suggested that a contingency occurred during the project such as would have obligated Plaintiff to charge his actual cost to repair.

Parenthetically, Note 6 is further evidence that change orders which were addressed in Note 7 were to be paid for on a time and materials basis as opposed to the actual cost.

Finally, in Paragraphs 23, 24, Defendants claim error in their perceived failure of the Court to consider the testimony of Klaus Jaeger and Jobe Glenny "despite the fact" that the Court did not find these men to be other than credible witnesses.

11

000741a

These claims of error are apparently based upon the proposition that unless a court makes a finding that a witness is not credible, the testimony of the witness must be accepted in toto. We are not aware of any authority for such a proposition. In every jury trial we tell juries that they are the sole judges of the believability of the witnesses' testimony and that they are free to believe all or part or none of each witness's testimony. Pa.SSJI (Civ) 4.20. We also tell juries that in judging the credibility of a witness that they should understand that it is not uncommon for a witness to be innocently mistaken in his or her recollection of how something happened. Pa. SSJI (Civ) 4.09. These instructions apply to judges as well as jurors, and we reject the notion that we are obliged to accept all of the testimony of witnesses we find credible and similarly reject all the testimony of witnesses we find not credible. In any event, neither of the last two (2) claims for relief provide a basis for relief.

## Plaintiff's Post-Trial Motion

Plaintiff's singular complaint is that the verdict did not include an award of costs and prejudgment interest as requested in the Complaint. For the

12

000742a

reasons that follow the verdict will be amended to include these items of damage.

With respect to costs, the Superior Court of Pennsylvania in DeFalvio v. Holst, 239 Pa.Super. 66, 69, 362 A.2d 1098, 1099 (1975), stated that "It is a general rule in our judicial system stemming from the Statute of Gloucester, 6 Edw. 1, C. 1 (1275), that costs inherent in a law suit are awarded to and should be recoverable by the prevailing party. These are the costs of proceeding in Court, not those of preparation, consultation, and fees generally". See also Iffland & Co. v. Sobel, 107 Pa.Super. 81, 83, 163 A. 331 (1932), where the Court opined that in an action at law, the costs follow the judgment.

With respect to prejudgment interest, Pennsylvania has adopted the Restatement (Second) of Contracts 354 which provides as follows:

**"354 Interest as Damages**

(1) If the breach consists of a failure to pay a definite sum in money or to **render a performance with fixed or ascertainable monetary value**, interest is recoverable from the time for

13

000743a

performance on the amount due less all deductions to which the party in breach is entitled.

(2) In any other case, such interest may be allowed as justice requires on the amount that would have been just compensation had it been paid when performance was due." (Emphasis added.)

The issue then is whether the amount owed Plaintiff was at the point of breach readily ascertainable. Inasmuch as the amount of the verdict is the same as the adjusted final bill presented to Defendants in September, 2008, the answer to the query is obviously that the amount of damage was readily ascertainable.

## Conclusion

An order consistent with the views expressed will be entered.

BY THE COURT,

_____
S.J.

DATED: March 20, 2017

14

000744a